## Rutter *against* Gable.

R. against whom a domestic attachment had issued, transferred to G. a check for the payment of money, which G. applied to the payment of a debt for which he was security for R. *Held* that an action for money had and received would not lie by the trustees under the domestic attachment against G. to recover the amount of the check.

**ERROR** to the Common Pleas of *Lancaster* county.

This was an action on the case for money had and received by John Mathiot and others, trustees of Levi Rutter under a writ of domestic attachment, against Jacob Gable; in which the following case was stated in the nature of a special verdict:—

On the 7th of June 1838, a note drawn by Levi Rutter, endorsed by Jacob Gable, the defendant, and discounted at the Lancaster Savings Institution, for the sum of $300, became due at the office of the said Institution, and was regularly protested for non-payment, and notice thereof duly given to the endorser.

On the 8th of June 1838, Thomas Gillespie drew his check on the Western Bank of Philadelphia, payable to the order of Levi Rutter, for the sum of $184.73, and placed the same enclosed in a letter directed to Levi Rutter at Lancaster, in the post-office at Philadelphia. This letter was taken from the post-office at Lancaster on the 11th of June following, by William Rutter, and carried by him to the office of the Lancaster Savings Institution. It was there opened, the said check taken out, and deposited by William Rutter in the said Institution, for safe-keeping, and a certificate to that effect given by the treasurer thereof to the said William Rutter. Afterwards, on the same day, the defendant, Gable, presented this certificate to the said treasurer, with the order from William Rutter upon the same, and demanded the said check, which was given up to him. He immediately endorsed the check, by writing on the back of the same, the words " Jacob Gable, for Levi Rutter," and again deposited it with the said Institution for collection, and directed the proceeds thereof to be credited to him, and applied, when received, towards the payment of the note of Levi Rutter endorsed by himself, as above stated. The check was on the next day, (12th June,) remitted to the Schuylkill Bank, at Philadelphia, presented at the Western Bank, and paid to the cashier of the Schuylkill Bank, who credited the amount thereof to the Lancaster Savings Institution. That Institution credited

[Rutter v. Gable.]

the amount to the defendant, and applied the proceeds in part payment of the said note, as directed by him, whereupon the defendant paid to the said Institution the remainder of the amount due on the said note, and received the same note into his own possession.

The defendant, Gable, never was authorized by Levi Rutter to act as his agent, nor to transact business of any kind for him, or in his name.

On the 11th of June 1838, a writ of domestic attachment issued from the District Court of the city and county of Lancaster, of September Term, 1838, No. 1., at the suit of Joseph Potts against the above-mentioned Levi Rutter, under which such proceedings took place, that on the 4th of October 1838, the said Court appointed the plaintiffs in this suit trustees of the said Levi Rutter, and the said trustees accepted the trust, and were duly and in all things qualified to act as such, according to law, of all which proceedings the defendant had notice after the attachment issued, but before the institution of this suit. Defendant having refused to pay over the amount of the said check to the plaintiffs on demand made by them, this suit was instituted to recover the said sum, on the 5th of June 1839.

Notice of the attachment was given to Samuel E. Gundaker, cashier of the Lancaster Savings Institution, and he was summoned as garnishee, on the 15th of June 1838, before which time the amount of said check had been credited to Jacob Gable as above stated.

If on these facts the court are of opinion that the plaintiffs are entitled to recover, then judgment for the plaintiffs for the amount of the said check, with interest from the institution of this suit—otherwise judgment for defendant.

The court below (Hays, President) rendered a judgment for the defendant.

*Long,* for plaintiff in error.
*Reigart,* for defendant in error.

The opinion of the Court was delivered by

HUSTON, J.—The case stated gives us the outlines of the matter in dispute: but as to some particulars is not so explicit as could have been wished. It would seem, from the conduct of the Savings Institution, and the readiness which they showed in giving Gable the deposit certificate, and the control of the check, that they considered William as having authority to act for Levi Rutter; but nothing is said about this in the case stated, though it finds that Gable never was authorized by Levi to act as his agent, or transact any business for him. Perhaps it may not be material in the form of action selected by the plaintiffs in this

I. — K

case, to inquire into the authority of William. The action for money had and received admits the defendant to have received the money fairly—so entirely so, that where a defendant has been guilty of a trespass, even attended with such aggravated circumstances as might justify a jury in giving exemplary damages, yet if defendant has sold the goods and sued for the price of them in *assumpsit* for money had and received, all claim for trespass, and even for the value of the goods upon the allegation that he has sold them for less than the value, is out of the question; the form of action admits his authority to sell, and the fairness of the sale. A remarkable case on this subject is found in 4 *T. R.* 211, *Smith* v. *Hodson* cited 2 *Smith's Lead. Cas.* 81. Smith was the assignee of Lewis and Potter, who were bankrupts. Before the bankruptcy, Hodson had accepted a bill for the accommodation of Lewis and Potter to the amount of 442*l.*, payable at six months. On the 26th of April several bills presented to Lewis and Potter were refused to be paid; on the 28th of April Hodson purchased from them goods to the amount of 531*l.* 7*s.* 6*d.* on a credit of six months; on 29th of April they committed an act of bankruptcy; on 9th of May commission issued, and in due time plaintiffs appointed assignees. In the mean time, the bill accepted by Hodson fell due on 7th of May. Hodson did not pay it on that day, but paid it in September following, about the time the credit on the goods he bought expired. The assignees after this sued Hodson for the price of the goods sold. He paid into court the balance between the amount of the accepted bill and the price of the goods. The jury, at the request of the court, found the purchase of goods to have been unfair, as to other creditors, and found for the plaintiffs. There was a motion to set aside the verdict, and enter a nonsuit, as if a special verdict. Lord Kenyon, among other things, says, " It is expressly found that the goods in question were delivered by the bankrupts to the defendant with a view to defraud the other creditors, and therefore an action might have been framed to disaffirm the contract, which was thus tinctured with fraud; if the assignees had brought an action of *trover*, they might have recovered the value of the goods." He then goes into an exposition of their statutes of bankruptcy, for an exposition of the changes in which, see note to 2 *Smith's Leading Cases*, 178; at first all acts and dealings, though otherwise *bona fide*, were avoided from the time the act of bankruptcy was committed; then from the time when the commission issued; and by 6 *George* 4, *ch.* 16, it was extended to the time when the party had notice of the bankruptcy; and then he says, " if *trover* had been brought, the defendant would have had no defence;" and after stating the difference between the effect of different actions, he concludes, " now here the assignees, by bringing this action on the contract, recognized the act of the bankrupt, and must be bound by the trans-

[Rutter v. Gable.]

action in the same manner as the bankrupt himself would have been; and if he had brought the action the whole account must have been settled; therefore, on the distinction between the action of *trover* and *assumpsit,* we are all of opinion that a judgment of nonsuit must be entered."

I shall cite one more case: *Thorpe* v. *Thorpe,* 3 *Barn. & Adol.* 580; in which the previous cases were considered. The defendant had received from the plaintiff a bill, endorsed and payable to plaintiff, for the purpose of receiving the money and paying it to W. He received the money, and did not pay it to W., but retained it to pay a debt to himself. Parke J. says, " if the plaintiff, instead of *assumpsit* for money had and received, had chosen to bring a special action for the breach of duty, there could have been no set-off, because the suit would have been for unliquidated damages—but by bringing *assumpsit* for money had and received, he lets in the consequences of that form of action; one of which is the right of set-off." And we have seen by the last case that assignees are as much bound by the form of action as the bankrupt would have been, if he had sued; to this latter position see *Brewer* v. *Sparrow,* 7 *B. & C.* 310. One more case :—*Hulme* v. *Muglestone,* 3 *Ince & Webb* 30, was an action for money had and received to the use of the assignees of J. S. The defendant pleaded, that before notice of the bankruptcy, he endorsed a bill for the accommodation of J. S., and discounted another for him, both of which he was obliged to take up *after* the bankruptcy; that before the bankruptcy, J. S. lent him a check, the proceeds of which he received *after* the bankruptcy, which was the same money now sued for, and against which he claimed to set off the amount of the dishonoured bills. The court held the plea good; this clearly on the form of action.

The 19th section of our attachment law says, " the trustees shall be vested with all the estate of the debtor, at the time of issuing the attachment, subject to all liens existing at that time."

In the 20th section, it is provided, " that no purchase or assignment of the personal property of such debtor, made *bona fide* and for a valuable consideration, by or to any person having no notice or knowledge of the attachment, shall be invalidated or impaired thereby."

These are exceptions to the rule in section 19. In such case, the property does not vest in the trustees at the time of the attachment.

The case before us is stronger in favour of the defendant than that first cited. An endorser on a note protested is as much fixed for the amount as the acceptor of a bill. Gable got the check at least as fairly as Hodson got the goods; and he paid the debt before notice of the attachment. Hodson did not pay the bill for several months after: the form of action protected Hodson. This defendant is infinitely stronger in his defence than in the last case

[Finney v. Cochran.]

in which the defendant lent his name, and discounted the note, and got possession of the check before notice, yet all the money was paid out, and the amount of the check received after notice. In that case, however, the form of action saved the defendant. In the case before us, all was received and paid before notice; and *assumpsit* for money had and received must have the same effect as in the cases cited.

Judgment affirmed.