## CLARK *v.* McELVY *et als.*

A bill of sale for a mining claim, not under seal, and without warranty, which only purports to convey to the vendee the right, title and interest of the vendor, will not pass the title, although the vendor is in possession at the time, if such possession is without title.   Such a bill only passes an equity, which is subject to the legal title or any superior equity.

In such a case, the purchaser takes the risk of any infirmities or defects of title which may exist.   The doctrine of *caveat emptor* applies to all such cases.

APPEAL from the District Court of the Fourteenth Judicial District, County of Nevada.

Ejectment to recover a mining claim.

The case was tried before a jury, who, under the instruction of the Court, returned a verdict for the plaintiff.   It seems that one Matteson, in 1853, was possessed of a certain piece of mining ground, and in consideration of a note made by one Head and one Flippen, with one Grier as surety, in July of the same year, executed and delivered a bill of sale of the ground to Head and Flippen, jointly.   Evidence was offered, in the course of the trial, tending to show, if credited,

Clark *v.* McElvy.

that Head and Flippen, after getting the bill of sale, went to the ground, not far off, and found some other persons in possession. They then returned to Matteson, and informed him of the fact. The bargain was thereupon rescinded, the note destroyed, and Flippen agreed to destroy the bill as soon as he returned to his cabin, where it was. It had not been recorded. Matteson, Head, Flippen and others then determined to drive the persons in possession off the ground. They did so, and kept the possession themselves. Two or three days afterwards Flippen sold the claim, or his interest in it, to Clark, the plaintiff below. Matteson, shortly after this sale, sold the interest or share to Head, who thereby, as claimed, became owner of the entire claim. Head remained in possession, working this and other claims, forming a compact body or tract of land, for several years, and until sold to the defendant below. In December, 1857, Clark, the plaintiff, brought this suit.

It seems to be assumed, in the instructions and in the argument, that some proof was made that Flippen, at the time of the sale to Clark, was in possession, and showed Clark the bill of sale from Matteson, or that Clark saw it, or had knowledge of its existence and contents ; and we assume that this is true.

The bill of sale from Matteson to Head and Flippen is not in the record. The bill of sale from Flippen to Clark is, in these words :

"NEVADA, July 5, 1854.

"Know all men by these presents, that in consideration of two hundred and fifty dollars, in hand paid and this day received, I hereby sell and transfer all my right, title and interest — said interest being one-fourth — in claim situated, etc., on Little Deer creek, and known as Booth & Co's claims, unto J. M. Clark ; in token of which, I hereby set my hand and seal, this day.

"(Signed)                    WILLIAM ⋈ FLIPPEN.

"G. H. GRANT, *witness.*"

No seal is affixed to the name of Flippen.

The first instruction of the Court was as follows :

"That if the jury believed from the testimony that Head and Flip-

pen purchased two interests in the ground in dispute, gave a joint note with Grier as security, and received a joint bill of sale ; that on finding other parties claimed the ground, they returned to Matteson, from whom the ground had been purchased ; that an agreement was then made to cancel and annul the sale of said claims, for the surrender of the bill of sale, and that the joint note was given up and canceled, but the bill of sale, being away, was not given up — then as between the parties, and all parties having notice, these acts worked as a cancellation of the bill of sale.    But if, notwithstanding such agreement, Flippen neglected to destroy the bill of sale, as he had promised, and that Clark, upon the strength of the bill of sale, knowing it had been executed, and not knowing of the agreement to cancel, was induced thereby to purchase — then he would be entitled to recover agaist a subsequent purchaser of the same interest from Matteson ; and at request of defendants' counsel, the Court said to the jury, that if Clark was not induced to purchase by the bill of sale, ( or if the bill of sale was not the principal inducement to the privileges) then those holding under Matteson subsequently are not estopped from setting up claim against Clark."

Plaintiff had judgment, and the defendants appealed.

*Meredith and Hawley* for Appellants.

The instructions were erroneous.

1st. Because thereby the jury was required to regard " a bill of sale " for a mining claim in the light of a negotiable instrument, and the purchaser in good faith, from the holder of such bill of sale of the land mentioned in the same, in like position with, and with like rights to, an endorser in good faith of a bill of exchange.

The doctrine of *caveat emptor* is entirely ignored in the instructions, and the whole case made to turn with the jury upon the question whether the purchaser Clark had *notice* that his grantor had *no title*.

The instructions required the jury, after finding that the sale had been revoked or cancelled by mutual agreement and concurrence, and that the interest before intended to be conveyed had revested or remained in Matteson, leaving none in Flippen, plaintiff's grantor, at the time of sale to plaintiff; further and also to find that *the bill of sale*

Clark *v.* McElvy.

LIBRARY.

*had been destroyed,* and that Clark, plaintiff, did *not* know that his grantor had *no* title.

How could the interest of the parties be affected by the *destruction* of a bill of sale of a mining claim, when the contract intended to be expressed in such instructions had been revoked by the parties to it?

A contract may be rescinded by consent of the parties, and this is an elementary rule of law applicable alike where real or personal property is the subject of the agreement. 1 Parsons on Cont. 190.

When a contract is rescinded, it cannot be rescinded as to one of the parties, and remain in force as to the other; and this proposition logically results from the well established rule that there must be mutuality in every agreement. The surrender and destruction of the note, pursuant to the agreement to annul the bargain, worked a cancellation *in toto*.

If the contract was rescinded as to Matteson, it was rescinded as to Flippen, and this left Flippen no interest whatever in the subject of the contract—the mining claims.

Flippen having no interest, could convey none: " *nemo plus juris in alium transferre potest quam ipse habet.*" Broom's Legal Max. 354.

The only exceptions to this principle controlling the transfer of property are—

1st. That in favor of a *bona fide* purchaser of goods in *market overt.*

2d. That in favor of a *bona fide* purchaser of a negotiable instrument, bill of exchange, etc.

3d. That in favor of a *bona fide* purchaser of a bill of lading.

There is no *market overt* in this State, or in any State of America.

It is wholly unsustained by reason or judicial ruling (unless in this instance) that " a bill of sale " for a mining claim, so long as it is *not destroyed,* is a *negotiable instrument*; and that the holder thereof, without right or title to the lands mentioned in it, can by reason of such holding convey such lands to one whose innocence equals his simplicity in purchasing without inquiring as to the title of such holder.

The learned Judge in the Court below seems to have regarded the bill of sale as a negotiable instrument, and that its transfer carried the land mentioned in it to a purchaser *without notice* of the defect of the holder's title.

Is a mining claim land or personal property ?    Until the question is otherwise decided, I must hold the opinion that its characteristics are those of realty.    This Court seems to have so regarded a mining claim in the case of The Merced Mining Co. *v.* Fremont, 7 Cal. Rep. 317.

If a mining claim is real estate, a bill of sale, not being an instrument under seal, conveys no title, and imparts notice to no one. Neither the instruction of such an instrument, therefore, nor the execution of a like one reconveying, was required in this case to produce a rescission of the contract; and one with knowledge of all the acts, or the whole transaction between the parties, could become a purchaser in good faith from Matteson, the original owner, and acquire title.

2d. The instructions of the Court were erroneous, because contradictory to and irreconcilable with those given at defendant's request.

The latter rendered the finding of title in Flippen, plaintiff grantor, at the time of the pretended and false sale to plaintiff, indispensably necessary to a verdict for plaintiff.    Those which were immediately afterwards given on the Court's own suggestion, completely ignored that requisite, and placed plaintiff's right to recover alone on the grounds of the destruction of the bill of sale, and that plaintiff had *no notice* that his grantor had *no title.*

The first proposition of the judge's oral charge is, in substance, that parties to an agreement and their privies with notice are bound by such agreement.    We apprehend that this doctrine, as applied to the case at bar, will not be questioned.    See Hostler *v.* Hays, 3 Cal. 302; Barroilhet *v.* Battelle, 7 Cal. 450; Bird *v.* Lisbros, 9 Cal. R. 1.

The second section of the oral charge, if taken by itself, may be questionable law; but if wrong, the error is against the plaintiff and in favor of the defendants.

This is an action of ejectment, and under the pleadings we have only to establish title in ourselves or in our grantor; but the instruction is to the effect that we must prove : 1st. That at the time of our purchase we believed Flippen had no title.    2d. That we were induced to purchase by the first bill of sale.    3d. That we were ignorant of the agreement existing between Matteson and Flippen, our grantor, to destroy a certain instrument.    All this was certainly against a plaintiff who had only to prove title.    Belief, inducement and ignorance are

issues alike foreign to the case presented by the pleas, and maintained by the proof; and the rule is well established that the verdict will not be disturbed unless the instruction prejudice the party complaining. See 4 B. Mon. Rep. 386.

If, however, this oral charge be examined in connection with the written instructions which follow, it will be seen that as a whole they embody the law of this case.    Says the Court, through defendants' written instructions: "If Clark's grantor parted with his title before his sale to Clark, you must find for defendant."    Any doubts which the jury may have entertained from the oral charge of the judge, were fully corrected by the full and positive instructions which followed. The rule is too well established to require argument, that instructions must be construed together.    Although some single propositions may be incorrect, yet, if from the whole it appears that the law was correctly given, the verdict will not be disturbed.    Dwinelle *v.* Henriquez, 1 Cal. 388; Carrington *v.* Pacific Mail Steamship Company, 1 Cal. 475 ; Haskell *v.* McHenry, 4 Cal. 411.

The rule in all these cases appears to be this : that if, from the whole charge construed together, the law was correctly given, an incidental error will not vitiate the verdict.

In the case of Cunningham *v.* Dorsey, 6 Cal. 19, a new trial was granted, though an erroneous instruction was given with a correct one upon the same point.    It will be seen, upon an examination of that case, that the only question was the amount of damage sustained by the plaintiff, and the error of the Court was in giving the measure of damages sustained by the plaintiff.    The rule of computation was exclusively a question of law, and the verdict of the jury was directly dependent upon this.    In such a case, the Court may properly decide that the true rule upon this point being absolutely necessary to the determination of the case, and there being nothing in the verdict to decide by which instruction the jury were governed, a new trial must be had. .    In that case, also, both instructions were in writing, and with the jury in their deliberations.    But in the case at bar, the correct rule alone was in writing, and the oral error, if it existed, was lost to all save the ear of the defendant's attorney.

BALDWIN, J., after stating the facts, delivered the opinion of the Court—TERRY, C. J., and FIELD, J., concurring.

It is not very material, in the view we have taken of this case, whether we regard these mining claims as real or personal estate. The bill of sale from Matteson to Flippen and Head may be left out of the question. The bill from Flippen to Clark only purports to convey to the latter the right, title and interest—whatever that was—of the grantor. If Flippen had no real interest, by reason of the cancellation of the contract of sale, he could convey none, by such a contract as that in evidence, to his grantee.

The bill of sale, not being under seal, even if it were otherwise sufficient to pass the legal title to real estate, it did not pass any in this instance; it passed only an equity, and this equity is subordinate to the legal title or to any superior equity. This was decided in the case of Dupont v. Wertheman, 10 Cal. 354. In such case, as shown in the case cited, the assignee stands in the shoes of his assignor.

The instrument does not pretend to be a conveyance of the land, but only of the right, title and interest in it, and this without warranty. It is held in such cases that the instrument only conveys the present right or title of the party granting. The purchaser takes the risk of any infirmities or defects of title which may exist. (Adams v. Cuddy, 13 Pick. 463; Mowe v. Godfrey, 3 Story's R. 391; 1 Cowen, 613; 9 Ib. 13; 4 Kent, 261; 12 Pick. 47; 13 Ib. 116, 460; 14 Johns. 193; 20 Ib. 478; and 13 Sergt. and R., cited in case of Dupont v. Wertheman.) The doctrine of *caveat emptor* applies in every such case. It was the duty of Clark, under such circumstances, to inquire of Matteson into the true state of the title; or if he buys only the interest of the grantor without such inquiry, he must run the risk of his speculation. The title being really in Matteson, or Matteson, after the cancellation, having on the hypothesis of fact assumed the superior equity, Clark would get nothing by his purchase under the contract evidenced by this bill of sale. The defendant succeeding to the title of Matteson, has the same rights.

There is nothing in the point made by the respondent, that no exception was taken to separate portions of the charge. It will be seen

that the charge is so connected as that each part relates to the rest, and the substance of it opposes the view we have just presented.    Nor is there anything in the point that the Court gave the instructions asked by the defendant; which, considered alone, seem to place the law substantially as we have given it.    If the instructions were directly contradictory this would be a good ground for reversal.    If to be taken altogether, the one set qualifying the others, then the error we have pointed out exists.

We are not to be understood as expressing any opinion, or giving any intimation whatever as to the facts of this case.    It is for the jury to pass upon them.    The parties are entitled to have the law applicable to any supposed hypothesis of fact of which there is legal evidence, distinctly given to the jury, that they may apply the law to the proofs.

The judgment is reversed and the cause remanded.