SIMEON B. SHONINGER AND ANOTHER vs. FREDERICK O. PEABODY.

New Haven Co., June T., 1888. PARK, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

The agent of the plaintiffs sold a piano to the defendant, at an agreed price, to be paid by commissions on business to be done for the agent by the defendant as a stock-broker. The plaintiffs, with knowledge of the facts, sued the defendant for the agreed price. Held that they had thereby affirmed the contract of their agent, not merely as to the sale but as to the mode of payment.

The plaintiffs might have repudiated the entire contract made by their agent, and have recovered the piano by an action of replevin, or its

value by one of trover, but they could not affirm it in part without affirming it wholly.

[Argued June 22d, 1888—decided January 4th, 1889.]

ACTION to recover for a piano sold; brought to the District Court of Waterbury, and tried to the court before *Bradstreet, J.* Facts found and judgment rendered for the plaintiffs, and appeal by the defendant. The case is fully stated in the opinion.

*J. O'Neill* and *C. A. Colley,* for the appellant.

1. The defendant bought and agreed to pay for this piano out of the commissions which he should earn from the agent. It is difficult to see how he can be compelled to perform any other contract than the one he has entered into. It may be admitted for the purposes of this case, that the agent had no power to agree to take anything in payment for this piano but cash, and we do not deny that the principals had the right, as soon as they learned the facts, to disaffirm the acts of their agent, rescind the sale, and recover the piano from the defendant in an action of trover or replevin. And if the defendant had sold the piano and received the money the plaintiffs might perhaps waive the tort and recover in assumspit the money received. But this was not the fact.

2. But the principals cannot adopt the agency in part only. They are not permitted to confirm so much of the act of their agent as they shall think beneficial to themselves, and reject the remainder. 1 Parsons Cont., 46, 52; Story on Agency, 250; *Smith* v. *Hodson,* 1 T. R., 211; *Hovey* v. *Blanchard,* 13 N. Hamp., 145; *Farmers' Loan & Trust Co.* v. *Walworth,* 1 N. York, 447; *Bennett* v. *Judson,* 21 id., 238; *Peters* v. *Ballister,* 3 Pick., 495; *N. Eng. Marine Ins. Co.* v. *De Wolf,* 8 id., 56; *Lime Rock Bank* v. *Plimpton,* 17 id., 159; *Culver* v. *Ashley,* 19 id., 300; *LeBreton* v. *Peirce,* 2 Allen, 11; *Berkshire Glass Co.* v. *Wolcott,* id., 227; *Butler* v. *Hildreth,* 5 Met., 49; *Browning* v. *Bancroft,* 8 id., 278; *Sears* v. *Carrier,* 4 Allen, 339; *Snow* v. *Alley,* 144 Mass., 546; *Hastings* v. *Bangor House Proprietors,* 18

Maine, 436; *Bigelow* v. *Dennison*, 23 Verm., 564; *Whitlock* v. *Heard*, 3 Rich., 88.

*S. W. Kellogg* and *J. P. Kellogg*, for the appellees.

1. The only claim of the defendant, appearing on the record, is, that the sum of $185, due as commissions from Day, the plaintiffs' general agent, to the defendant by reason of his private stock speculations, and for which he gave the defendant credit on account of the piano, should be credited to the defendant as payments on the piano, as against the plaintiffs, who had had no knowledge of these stock transactions. A suit against the defendant for the price of the piano was the proper one to bring and in which to meet this question. The defendant had admitted the purchase by making three payments to the plaintiffs in cash on account of the piano. It would have been impossible to maintain either replevin or trover, with the fact found that the defendant made and the plaintiffs accepted these payments in cash, the sole question in issue being whether the defendant should be allowed to maintain a mode of payment for the balance which he was bound to know was unauthorized.

2. An agent employed to sell has, as a general rule, no authority to receive payment otherwise than according to the general course of business, and it is well settled by many decisions that a debtor cannot claim payment against the principal by crediting himself with a debt due him from the principal's agent. Story on Agency, 4th ed., §§ 413, 430; Benjamin on Sales, §§ 742, 745 *a ; Squires* v. *Barber*, 37 Verm., 558; *Stewart* v. *Woodward*, 50 id., 78; *Bevis* v. *Heflin*, 63 Ind., 129; *Aultman* v. *Lee*, 43 Iowa, 404; *Bernshouse* v. *Abbott*, 45 N. Jer. Law, 531; *Pearson* v. *Scott*, L. R., 9 Cha. Div., 198. In *Squires* v. *Barber, supra,* one *C.* was the plaintiff's agent and sold the defendant a chest of tea and barrel of molasses. At the time of the sale he owed the defendant twenty dollars and agreed to pay that debt out of the price of the goods sold him. Held, that the defendant could not set off this claim against *C.* in an

action in assumpsit for the goods by *C.'s* principal. The facts in *Stewart* v. *Woodward, supra,* were that the plaintiffs, who were merchant tailors, sought to recover in book account of the defendant, a physician, for clothing delivered to him by *C.,* their general agent, upon the understanding that the goods should apply upon an existing indebtedness of *C.* to the defendant for medical attendance, the defendant believing that *C.* had an interest in the business, and authority so to dispose of the goods, and otherwise he would not have taken the goods. It was held that the plaintiffs, having held out *C.* as their general agent only, the defendant was bound to measure the scope of his authority, and was liable upon his implied promise in this form of action for the value of the goods, and that he could not set off his claim against the plaintiff's agent. In *Pearson* v. *Scott, supra,* four executors, holding stock in their own name, directed their solicitor to sell the stock. The solicitor in the name of his firm gave to a broker, whom he had had dealings with in stock speculations, directions to sell the stock. He sold the stock, and the solicitor returned to him transfers of the stock with receipts indorsed by the four executors. On the completion of the sale the broker returned to the solicitor a cheque for part of the purchase money for the shares, and carried the balance, some £3,000, to the credit of the solicitor in the account between them. It was held that payment to the solicitor by credit on their mutual account, the broker having under the circumstances notice that the stock did not belong to the solicitor, was not sufficient to discharge the broker, who remained liable to the executors for the balance. In view of these cases, in nearly all of which there is an element of *bona fides* on the part of the defendant totally wanting in this case, we cannot conceive it possible that this defendant can be permitted to pay his debt due to the plaintiffs by crediting himself with private stock gambling debts due him from the plaintiffs' agent.

LOOMIS, J. The plaintiffs have been for many years dealers in musical instruments at New Haven, with a branch

store at Waterbury, which from 1880 to October, 1886, was under the sole charge and management of one Henry R. Day, the general agent of the plaintiffs. Day was paid a regular salary and received in addition a commission on all sales made by him for the plaintiffs. While acting as such agent he sold from the store in Waterbury one of the plaintiffs' pianos to the defendant for the agreed price of three hundred dollars, which was agreed to be paid for wholly by certain commissions that might become due from Day to the defendant on future stock transactions between the defendant and Day on his private account. The defendant had been for a considerable time engaged in the business of a stock broker, and as such, had had previous dealings with Day. The plaintiffs had no actual knowledge of the sale of the piano until after Day had left their employment. He had reported to them that the piano was rented to the defendant. But the finding is explicit that the plaintiffs were informed of the terms of the sale after Day left their employ, and before the bringing of this suit. The defendant earned commissions in his stock transactions on Day's account to the amount of one hundred and eighty-five dollars, which were credited by Day on the piano account, but not paid over to the plaintiffs. In the year 1886 the defendant paid the plaintiffs several sums, aggregating seventy-five dollars, which is all the plaintiffs ever received towards the price of the piano. Day was a defaulter in his dealings with the plaintiffs to an amount exceeding five thousand dollars.

The manifest wrong and injustice perpetrated upon the plaintiffs by the defendant and Day, make us regret that the principles of law applicable to the remedy chosen by the plaintiffs are not flexible enough to afford relief. But the greatest good to the greatest number requires adherence to sound general principles, even though in a given case a party may fail in obtaining redress. The whole trouble in this case arises from a mistake as to the plaintiffs' remedy.

When the plaintiffs were informed of the terms of the contract made by their agent for the sale of the piano to

the defendant, they had an election to repudiate the arrange-
ment, and by tendering back what they had received in
ignorance of the terms of the sale, and demanding the
piano, they could have recovered it by an action of replevin,
or obtained its value in trover. But, knowing the terms of
the sale, they elected to sue in assumpsit on the contract
for the agreed price, and thereby they affirmed the contract
and ratified the act of the agent, precisely as if it had been
expressly approved upon being reported to them by the
agent or the defendant; and in contemplation of law a sub-
sequent ratification and adoption of an act has relation back
to the time of the act and is tantamount to a prior com-
mand. 1 American Leading Cases, 4th ed., 592.

The argument for the plaintiffs (though it is not so stated)
seems really to involve the fallacious assumption that the
plaintiffs could affirm the contract in part and repudiate it in
part, that is, that the contract is to be treated as good for
the agreed price, but bad as to the agreed mode of payment.
But the law requires a contract to be affirmed or repudiated
in its entirety. *Shepard* v. *Palmer*, 6 Conn., 100; *Newell* v.
*Hurlburt*, 2 Vermont, 351. See also the cases hereinafter
cited.

There was no contract at all relative to the piano except
the one made by Day as their agent, and when the plaintiffs,
knowing the facts, sued on that contract, they affirmed it in
every essential particular both as to price and as to the
terms of paying the price.

The leading case on this subject is *Smith* v. *Hodson*, 4 T.
R., 211, where it was held that if a bankrupt, on the eve of
his bankruptcy, fraudulently deliver goods to one of his
creditors, the assignees may disaffirm the contract and re-
cover the value of the goods in trover; but if they bring
assumpsit, they affirm the contract with all its incidents, so
that a creditor may even set off his debt; and the principle
established in that case has ever since been considered to
rest upon an impregnable foundation, that the existence of
the contract could not be affirmed to promote the purpose of
a recovery, and at the same time be treated as a nullity in

order to shut out the opposite party from a defense otherwise open to him.

In *Butler* v. *Gable*, 1 Watts & Serg., 108, the trustees in a domestic attachment, which is a proceeding in the nature of a commission of bankruptcy, sued the defendant in assumpsit for the amount of a check, which had been transferred to him by the party against whom the attachment issued, subsequently to its date, and relied on the invalidity of the transfer as ground of recovery. But it was held by the court, that whatever the result might have been had the action been laid in tort, the necessary result of laying it in contract was to affirm the transaction on which it was founded, and entitle the defendant to show that he had received the check in payment of a debt.

For the same reason it has long been held that a principal who seeks to enforce a sale made by his agent, cannot ordinarily allege that the agent exceeded his instructions in warranting the goods, because he must accept the contract as a whole if he means to rely on any portion.

The general consensus of judicial opinion in the United States is in perfect accord with the authorities cited from the English courts. We will select a few only of the numerous cases affirming the principles upon which we base our opinion.

One of the most recent cases is that of *Billings, Taylor & Co.* v. *Mason*, decided in August, 1888, by the Supreme Court of Maine, reported in Vol. 6 of New England Reporter, 791. The case is stated by DANFORTH, J., in giving the opinion of the court, as follows:—" The action is assumpsit upon an account annexed. The defendant admits that he received from the plaintiff the goods charged and makes no question as to the prices. This makes a *prima facie* case against him; and though technically it does not change the burden of proof, it devolves upon him, if he would avoid the responsibility, to give some reason why. The explanation offered by the defendant is, that though he received the goods from the plaintiff, he received them by virtue of an express agreement with an agent or traveling salesman of

the plaintiff, one element of which was that certain goods of a like kind, which the defendant then had, should be taken in payment. This agreement with the agent is not questioned, but the answer to it is twofold: (1) that the agent had no authority to make such a contract; and (2) that the contract under which the action is sought to be maintained was made directly with the plaintiff, though in some degree through the instrumentality of the agent. Assuming, under the first, that the agent had no authority to make the contract he did,—and the evidence is quite conclusive upon that point,—still it does not change the conceded fact that he not only assumed the authority to do so, but did actually make such a contract. Waiving for the moment the second point raised, this was the only contract having the assent of the defendant,—the contract under which he acted and by virtue of which he obtained the goods. It is quite clear that the plaintiff cannot hold him upon a contract he did not make, or repudiate the contract in part and hold the remainder valid. *Brigham* v. *Palmer*, 3 Allen, 450. Nor can he be holden upon an implied contract, for that is excluded by the express."

In *Smith* v. *Plummer*, 5 Wharton, 89, a contract made for the benefit of the defendants was held to have been ratified by their giving it in evidence as a defense in a suit brought contrary to its terms.

In *Beidman* v. *Goodell et al.*, 56 Iowa, 592, an agent for the owner of a note and mortgage took new notes for the debt, and in consideration of their being signed by the wife of the maker, who was not a party to the former note, agreed (without the authority of his principal) to cancel the mortgage. His principal having brought a suit and taken judgment against the makers of the new notes, was held to have ratified the agreement, so that he could not enforce the mortgage which at the time was improperly canceled.

In *Peninsular Bank* v. *Hanmer*, 14 Mich., 208, a contract was entered into by the cashier in behalf of the bank, by which security was given by a debtor on long time to a

creditor, in the interest and on motion and arrangement of the cashier, who, in order to procure the assent of the creditor, without authority from the bank made and delivered a bond of indemnity against a prior mortgage on the property covered by the collateral security. The bank received the benefit of the transaction and defended the creditor against a suit to foreclose the prior mortgage. It was held that, having appropriated the benefits, the bank must affirm or rescind *in toto;* that it could not disaffirm as to those parts which impose an obligation and affirm it so far as it operated to its advantage, and that the entire arrangement was ratified.

In *Whitlock* v. *Heard,* 3 Rich., 88, the plaintiff was a carriage maker and his shop was under the management of *W.* as his foreman. *W.* owed the defendant by note and made and delivered to her a buggy belonging to the plaintiff in exchange for the note. The plaintiff on hearing of this, disapproved of the arrangement and brought his action for the price, alleging it to have been sold. It was held that he could not recover;—that, regarding him as having adopted the contract, he would then be only entitled to the note; regarding him as having repudiated the contract, there would then be no sale of the buggy, and that his remedy was, after demand, to bring trover.

In *Berkshire Glass Co.* v. *Wolcott,* 2 Allen, 227, an agent was intrusted with chattels for a certain specified purpose; he wrongfully sold the goods and received payment in money. The principal brought an action of assumpsit against the purchaser for the price. It was held that he could not recover in assumpsit, the purchaser not having sold the property and received the money for it, but that the plaintiff might have recovered in an action of tort. The same principle is recognized in *Jones* v. *Hoar,* 5 Pick., 285. In the case at bar there is no claim that the defendant had sold the piano.

In *Butler* v. *Hildreth,* 5 Met., 49, an insolvent conveyed away his property in fraud of his creditors. The trustee brought a suit against the purchaser to recover the value of

the property; then he discontinued that suit and brought an action to set aside the sale on the ground of fraud. It was held that, having brought an action *ex contractu*, the sale was affirmed and the latter action could not be maintained.

In *Marsh* v. *Pier*, 4 Rawle, 273, the defendant purchased goods from *A.* as agent of the plaintiff, who brought an action and recovered judgment for the price. Afterwards the plaintiff disavowed the agency and brought replevin for the goods. It was held that the record of the former judgment was conclusive as an affirmance of the sale.

A vast number of other cases establishing the same principles might be cited, but the above will suffice. No conflicting cases were cited by the plaintiffs, unless *Stewart et al.* v. *Woodward*, 50 Vermont, 78, and *Squires* v. *Barber*, 37 Vermont, 558, are to be so regarded.

In the first of these cases an agent of the plaintiffs, who were merchant tailors, owed the defendant, who was a physician, a private debt for medical services for himself and family, and being unable to pay money, persuaded the defendant to take a suit of clothes out of the plaintiffs' shop in part payment, which was done. The court allowed the plaintiffs to recover of the defendant the price of the suit in an action of book debt, on the ground that the act of the defendant in receiving and converting the goods to his own use raised an implied promise to pay for them. The opinion of the court is very brief and contains no discussion as to the form of remedy and no reference to the authorities generally. As to the form of remedy, it is manifestly difficult to reconcile the case with some others we have cited. In regard however to the question whether the suit would be effectual as a ratification of their agent's act, we suggest this distinction:—that the act of the agent in paying his private debt with the plaintiffs' goods could not, perhaps, be regarded as an act done for or in behalf of the principals at all nor even in the principals' name, and was not properly a contract of sale at all, so that there was no express contract to be affirmed by the bringing of the suit, and nothing

to prevent the raising of the implied promise except the fact that the defendant had not sold the goods and received money thereon. It is undoubtedly a sound doctrine, established by numerous authorities, that to make a ratification effectual it must be of some act done or engagement made as agent for or on behalf of the person whom it is alleged to bind.

The other case cited from 37 Vermont, 558, was very similar in the principles that apply. An agent of the plaintiffs, who had authority to sell their goods, became insolvent, and owing the defendant a private debt, undertook to pay it out of the plaintiffs' goods, the defendant being charged with knowledge of all the circumstances at the time. The plaintiffs sued in assumpsit and the defendant, instead of denying the plaintiffs' claim, undertook merely to set off the debt against their claim, which of course could not be done.

There is error in the judgment complained of and it is reversed.

In this opinion the other judges concurred.