122  195
126  504
122  195
124  273
122  195
e148  476

[L. A. No. 352.   Department Two.—September 24, 1898.]

# H. E. MAXSON, Appellant, v. WILLIAM LLEWELYN et al., Respondents.

FRAUD—CIRCUMSTANTIAL EVIDENCE.—Fraud may in all cases be proved by circumstantial evidence; and in aid of the direct facts proved, legitimate inferences are permitted to be indulged to establish other facts not directly in evidence.

ID.—FALSE REPRESENTATIONS—REASONABLE GROUND FOR BELIEF.— Where a man makes a representation in the reasonable belief that it is true, fraud will not be imputed to him if it afterward be shown to be untrue; but there must be reasonable grounds for his belief, and if neither his belief of its truth, nor a reasonable ground for such belief, is made to appear, fraud in making the false representation may be inferred from circumstances indicating it.

LIFE INSURANCE—FALSE REPRESENTATIONS BY AGENT—DEFENSE TO CHECK FOR PREMIUM—SUFFICIENCY OF PROOF.—In an action by a managing agent of a life insurance company upon a check given for the first premium upon a policy of life insurance, which was defended on the ground of false representation, made by the special agent who secured the application, as to the favorable nature of the policy to be given, where no belief or reasonable ground for belief of the special agent in the truth of the representations was shown, and it appeared that the policy returned did not conform to the policy represented, and that it was highly improbable that an insurance company doing business legitimately would use such a policy as that represented, the circumstances are sufficient to justify the inference of the fraudulent character of the representations.

ID.—APPLICATION IN WRITING—PAROL EVIDENCE OF FRAUD.—It appearing that the special agent prepared the application, and that its nature was not understood by the applicant, and was not readily understandable by one not versed in insurance matters, the fact that it was in writing, and that the policy conformed thereto, does not preclude parol evidence of false and fraudulent representations made by the special agent concerning the policy, and that the signature of the applicant was secured by misrepresentation and fraud sufficient to vitiate the transaction.

ID.—CHECK PAYABLE TO SPECIAL AGENT—OWNERSHIP OF COMPANY— ACTION BY MANAGING AGENT—SUPPORT OF FINDING.—In an action by the managing agent personally upon a check drawn by the applicant in favor of the special agent for the amount of the first premium, payable four months after date, a finding that the plaintiff did not purchase the check for value before maturity, or at all, but took it as agent for the insurance company, which was its owner and holder, is supported by evidence that,

upon delivery of the policy and its immediate return by the applicant, as not being according to the understood terms, the managing agent wrote to the applicant that the application and check when received by him "immediately became the property of the company, and could not be recalled."

ID.—PAYMENTS BY MANAGING AGENT.—Such finding is not overthrown by evidence that, when the check was received, the managing agent advanced the commission of the special agent, and that subsequently, after knowledge of the repudiation of the contract by the applicant, he settled and adjusted the remainder of the premium in his accounts with the company as a cash charge against him.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.  J. W. McKinley, Judge.

The facts are stated in the opinion of the court.

Knight & Harpham, and G. R. Harpham, for Appellant.

William J. Hunsaker, and Paul R. Frost, for Respondent.

HENSHAW, J.—Plaintiff appeals from the judgment and from the order denying him a new trial.  He brought his action against the defendant Llewelyn as maker, and defendant George Larrabee as indorser, to recover upon a negotiable instrument in the form of a check.

Larrabee was a special or soliciting agent of the Mutual Life Insurance Company of New York, of which corporation Maxson was the manager for Southern California.  The check was given by Llewelyn in payment of the first year's premium upon a life insurance policy to be issued by the company to him.  By its terms the check was made payable upon a day after the date upon which it was agreed the policy should be delivered.  Plaintiff pleaded that he was the owner of the check, and that he had purchased it for value before maturity.  For answer the defendant made denial, and set up facts constituting misrepresentation and fraud in the procurement of the check, and showing at least a partial failure of consideration.  He also averred that plaintiff took the check with knowledge of these facts.

Upon the trial, he proved that Larrabee represented to him that his company would issue an exceptionally and peculiarly

favorable policy to him for the sake of other business which it hoped thereby to gain. Defendant signed a written application for a policy, and, not understanding its terms, was assured, in answer to his question, that this particular application would bring the policy agreed upon. Llewelyn thereupon gave his check for five hundred and sixty dollars, payable to Larrabee, but payable upon April 20, 1896. The application was signed and the check delivered upon December 20, 1895. The policy was to follow some time in January, 1896. Larrabee agreed that, if the policy was not as represented, the check would be returned. The policy which was issued was such a policy as was called for by the application, but in essential particulars was a different policy, and one less favorable to the insured than that which Larrabee had represented. Upon January 20, 1896, the defendant Llewelyn received the policy from the plaintiff Maxson. He returned it the same day, with a letter stating that the policy was not in accordance with the understood terms. Upon January 23d Maxson again sent the policy to Llewelyn, and in his accompanying letter said: "I return the policy herewith and shall hold you for its payment. . . . . Your check, application, and receipt for check were all dated December 20th. Application and check were in my hands on the 21st of December and immediately became the property of the company and could not be recalled." Llewelyn once more returned the policy and refused payment of the premium.

No evidence whatever was offered showing that Maxson had any actual knowledge of any misrepresentation by Larrabee. Larrabee made default and was not a witness upon the trial. Upon behalf of Maxson, it was shown that Larrabee presented to him upon December 21st the check and the application for the policy. The application called for a policy such as was regularly issued by the company. Maxson testifies that he gave Larrabee twenty-five dollars upon account of the check, upon the 21st of December, and a few days thereafter, having satisfied himself of the solvency of the maker, gave him seventy-five dollars more. About the sixth day of January he agreed with Mr. Forbes, his superior officer, and the general manager of the company, that he would be responsible for the payment of the premium to the company, and instructed the company to send the policy to him

for delivery and collection. It was so sent to him, and by him delivered unconditionally to defendant Llewelyn, with an indorsement showing the payment of the first year's premium. The net amount of the premium, two hundred and twenty-two dollars, was, in a later settlement and adjustment of accounts between him and the general office, made a charge against him, and settled accordingly. The time when the two hundred and twenty-two dollars was thus actually adjusted and settled in the accounts was after plaintiff knew from Llewelyn that he repudiated the contract.

By appellant it is first insisted that the charge of fraud and the evidence in support of it are both insufficient, in that it is not made to appear that at the time Larrabee made the representations to Llewelyn he did not believe he could procure such a policy, and that the only testimony upon the point is that such policy was not, in fact, procured. It would in most cases be extremely difficult, and in many cases absolutely impossible, to procure direct evidence of this nature. In all cases it is permissible to prove fraud by circumstances, and in most cases it is the only evidence available. In aid of the direct facts proved, legitimate inferences are permitted to be indulged to establish other facts not directly in evidence. (*Butler v. Collins*, 12 Cal. 457; *Levy v. Scott*, 115 Cal. 39.)

Where a man makes a representation in the reasonable belief that it is true, fraud will not be imputed to him if it afterward be shown to be untrue, but there must be reasonable grounds for his belief. (2 Pomeroy's Equity Jurisprudence, sec. 880; Kerr on Frauds, 57.) In this case no belief upon the part of Larrabee, and no reasonable grounds for belief, are shown; while, upon the other hand, the fact that the policy returned was not at all the policy represented, taken with the circumstance that it would have been to the last degree improbable that an insurance company doing business by legitimate methods would ever use such a policy as that represented, are circumstances enough from which the fraudulent character of the representations may be inferred.

Appellant further alleges that, whatever were the parol representations, the agreement of the parties was cast into writing in the application signed by defendant Llewelyn, and that in re-

sponse to that application the precise policy called for therein was delivered to defendant; but the application itself, prepared by the special agent, was of such a nature as not to be readily understandable, if understandable at all, by one not versed in insurance matters. It seems not to have been understood by the defendant, for he asked specifically whether the application which he sent would bring the desired policy. It thus appears that defendant's signature to the application was procured by misrepresentation and fraud sufficient to vitiate the transaction. Section 856 of the Code of Civil Procedure, which declares that no evidence may be received of the terms of an agreement which has been reduced to writing, other than the contents of the writing, expressly admits evidence to establish illegality or fraud. In *Union etc. Ins. Co. v. Wilkinson,* 13 Wall. 222, it is well said: "By the interested or officious zeal of the agents employed by the insurance companies in the wish to outbid each other and to procure customers, they not infrequently mislead the insured, by a false or erroneous statement of what the application should contain; or, taking the preparation of it into their own hands, procure his signature by an assurance that it is properly drawn, and will meet the requirements of the policy. The better opinion seems to be that, when this course is pursued, the description of the risk should, though nominally proceeding from the insured, be regarded as the act of the insurers. (*Rowley v. Empire Ins. Co.,* 36 N. Y. 550.)

"The modern decisions fully sustain this proposition, and they seem to us founded in reason and justice, and meet our entire approval. This principle does not admit oral testimony to vary or contradict that which is in writing, but it goes upon the idea that the writing offered in evidence was not the instrument of the party whose name is signed to it; that it was procured under such circumstances by the other side as estops that side from using it or relying on its contents; not that it may be contradicted by oral testimony, but that it may be shown by such testimony that it cannot be lawfully used against the party whose name is signed to it."

The court found that the plaintiff was not a purchaser of the check for value before maturity, and, indeed, that he was not a purchaser at all, but that Larrabee indorsed the check to plain-

tiff, and plaintiff took it, as the agent of and for the Mutual Life Insurance Company of New York, and that at the time of the commencement of the action the insurance company was the owner and holder of it. If there be any substantial evidence in the record supporting this finding, it is determinative of the case in respondent's favor. By appellant it is insisted that all the evidence shows that he was an innocent purchaser of the check, for value, before maturity, that he gave to Larrabee one hundred dollars for it, and that he paid the insurance company two hundred and twenty-two dollars more. For respondent it is contended that this evidence is all in harmony with the theory that the insurance company, and not the plaintiff, was the owner of the check; that plaintiff, as the superior of Larrabee, paid to him upon behalf of the company one hundred dollars for his commission, and on behalf of the company held the check for collection; that the proved fraud of the agent was the fraud of the principal, and that by showing that Larrabee's principal was the owner of the check this action for its collection is as successfully defeated as it would have been had Larrabee himself prosecuted it. In support of this argument respondent adverts to the admission in plaintiff's letter above quoted. Upon January 23, 1896, plaintiff wrote to Llewelyn that the check upon the 21st of December "became the property of the company and could not be recalled." This is affirmative evidence from the plaintiff himself in support of respondent's position, and against his own contention that he was the purchaser of the instrument. It is evidence sufficient, taken with the other circumstances, to support the finding.

The judgment and order appealed from are affirmed.

McFarland, J., and Beatty, C. J. concurred.

Hearing in Bank denied.