[Civ. No. 3314.   First Appellate District, Division One.—June 28, 1920.]

## ADA P. WILSON, Appellant, v. SAN FRANCISCO-OAKLAND TERMINAL RAILWAYS (a Corporation), et al., Respondents.

[1] NEGLIGENCE — PERSONAL INJURIES — ACTION FOR DAMAGES — RELEASE—FRAUD—PROOF BY CIRCUMSTANTIAL EVIDENCE.—In an action against a street railway company for damages for personal injuries sustained while riding as a passenger on a street-car of the defendant, it is error for the trial court to refuse to permit plaintiff to introduce evidence in support of her offer to prove by circumstantial evidence that a release signed by her was procured through the fraud and conspiracy of the agents of the company.

[2] ID.—PRACTICE OF FRAUD BY AGENT—RIGHT TO ACCEPT BENEFITS. In such case, it is immaterial whether the person who practiced the fraud upon plaintiff was an authorized or a self-constituted agent of the defendant, because, in either event, if an impecunious settlement was brought about through his trickery and falsehood, the defendant should not be allowed to take advantage of an unfair settlement thus made, accept the benefits thereof, and deprive plaintiff of a trial upon the real merits of the case.

[3] ID.—RELEASE—FRAUD—QUESTION FOR JURY.—Where a release of a claim for damages for personal injuries is tainted with fraud it should not be sustained, the question of whether or not such taint exists being one to be submitted to and decided by the jury.

[4] ID.—EXECUTION OF RELEASE BY NEURASTHENIC.—A release of a claim for damages for personal injuries executed by a profound neurasthenic should, under the law, be scrutinized with even more care than if she were in a normal condition.

---

1. Right in an action at law to attack release for fraud, notes, 13 Ann. Cas. 756; 20 L. R. A. (N. S.) 915.

APPEAL from a judgment of the Superior .Court of Alameda County. Wm. S. Wells, Judge. Reversed.

The facts are stated in the opinion of the court.

Ostrander, Clark & Carey for Appellant.

W. H. Smith, A. L. Whittle and Chapman & Trefethen for Respondents.

KNIGHT, J., *pro tem.*—This action was brought by plaintiff to recover damages for personal injuries claimed to have been sustained by her through the negligence of the defendant corporation while she was riding as a passenger on the street-car of said defendant corporation. The action was tried by a jury, and the court directed a verdict ·in favor of the defendant. Judgment was entered accordingly, from which plaintiff appeals.

The defendant corporation was the only defendant answering, and it pleaded a release executed by plaintiff, to the effect that she had accepted from said defendant corporation the sum of two hundred dollars in full settlement of her claim and had discharged said defendant corporation from further liability. After the jury had been impaneled and sworn, counsel for defendant corporation called the court's attention to the release pleaded in its answer. Plaintiff admitted the execution. of said release, but claimed that it was procured through the fraud and conspiracy of the agents of the defendant corporation and was, therefore, not binding upon plaintiff. The court thereupon directed that the evidence bearing on said release be first presented. Defendant corporation then offered said release in evidence, after which plaintiff, in support of her claim of fraud and conspiracy, offered certain oral testimony concerning the activities, and the declarations to her, of one Norwood, whom she claimed had, with the aid of the claims agent of the defendant corporation, fraudulently induced her to settle her claim. The evidence of Norwood's activities and declarations was excluded by the court, upon the ground that there had been no connection shown between said Norwood and the defendant corporation. After having unsuccessfully offered oral testimony on that point, counsel

for plaintiff reduced to writing and read into the record a statement embodying the facts and circumstances which plaintiff offered to prove and upon which plaintiff stated that she would rely as showing fraud and conspiracy. The court refused to allow evidence to be introduced in support of said offer, and, on motion of the defendant corporation, directed the jury to return a verdict for the defendants, and said verdict was rendered accordingly.

Plaintiff's complaint was filed on September 27, 1917. Summons was served on the defendant corporation on September 29, 1917.

The following, in substance, are the facts which plaintiff offered, in writing, to prove: On the afternoon of September 29, 1917, the same day on which the summons in the action was served, plaintiff was called to the telephone at her home in the city of Oakland, by some person who, after inquiring if she was Miss Wilson, represented himself to be Mr. Carey, one of plaintiff's attorneys. Plaintiff remarked that it did not sound like Mr. Carey's voice, to which said person replied that he had a dreadful cold and was hoarse. He then asked plaintiff what she had said to Dr. Buteau's nurse, to which plaintiff replied that she had told the nurse that she was feeling better. The person then stated that the nurse had so informed him and that he was afraid that it was damaging evidence against plaintiff, and that if she wanted to drop the case or settle it with the company he would not charge her anything for his services. He then asked if she would settle for one hundred dollars, to which plaintiff replied that she would not. The telephonic communication then ended. As a matter of fact, plaintiff had been examined by Dr. Buteau prior to the filing of her complaint. At the time of said telephonic communication plaintiff was attending her sister, who required almost constant attention, and plaintiff herself was extremely nervous, and afterward became discouraged with reference to her case because of what had been stated to her over the telephone. On October 10, 1917, said C. J. Norwood, who was a total stranger to plaintiff, called at plaintiff's home and inquired for her, but finding that she was not in, departed and returned the next day, at which time he stated to plaintiff that he had observed that she had brought suit against the San Francisco-Oakland Terminal

Railways; that he himself had been in the same accident but had not yet settled with the company, although he intended to do so. Plaintiff informed him that her attorneys had told her to settle her case; that she would like to settle and she asked said Norwood to let her know if he settled his case. Norwood stated that he thought he would see what he could do; that he himself had not done anything, but that he did not want to give his case to the lawyers; that he would rather settle with the company, and that he thought he would go down and see them, and he did not want to wait any longer. Norwood then departed, but afterward, on the same day, telephoned plaintiff that he had settled with the company, and requested the privilege of again calling on plaintiff, stating that he had something to her advantage to tell her. Later in the afternoon he called at her residence and stated to her that Mr. Mills, the claims agent of the defendant corporation, had told him that the attorneys for the company were going to call plaintiff down the next day and take her deposition, and that since plaintiff's attorneys had released her, if she wanted to settle with the company she had better go that afternoon; that if she waited until the next day it would be too late; that Mills had told him that he could not do anything afterward because it would be in the hands of the lawyers. Norwood then, at the request of plaintiff, telephoned Mills and made an appointment with him for plaintiff, and afterward accompanied plaintiff to the office of said Mills. After conversing with Mills, plaintiff accepted a check for two hundred dollars in full settlement of her claim. The telephone message purporting to have come from Mr. Carey was not Mr. Carey, nor was it from any of plaintiff's attorneys, but plaintiff did not know that she had been deceived until the next day, October 12, 1917.

Plaintiff further offered to prove that the statement made by said Norwood at the time he called on plaintiff on October 11, 1917, to the effect that he had not yet settled with said company, was false, and that he had in fact settled with said company in August, 1917, and that prior to visiting plaintiff said Norwood had consulted with said Mills with reference to plaintiff's case and with reference to a settlement of plaintiff's case. Plaintiff further offered to prove by said Dr. Buteau that as a result of the injuries

received by her she was a profound neurasthenic and had suffered a severe shock to her nervous system. Plaintiff further offered to prove that at the time she called at Mills' office with Norwood she was in an extremely nervous condition and was depressed and discouraged because of the telephone message that she supposed was from Mr. Carey; that in accepting the check for two hundred dollars she did so because of the fact that she believed that she had been abandoned by her attorneys, and because of the statements made to her by said Norwood to the effect that if she did not settle before the following day it would be too late for her to settle, and because of the various matters stated to her by said Norwood with reference to the treatment a Mrs. Marshall had received who had a claim against said company for injuries received in an accident while on a street-car of said company, to the effect that Mrs. Marshall had been subjected to X-rays and had been severely examined by the attorneys for the company; that in making the settlement with said Mills plaintiff was ignorant of her rights in the premises and believed that if she did not settle upon that day it would be too late for her to settle, which belief was induced by the statements of said Norwood to her; that upon ascertaining from her attorneys on the following day that they had not withdrawn from her case she authorized them to tender the check back to said Mills and to said defendant corporation, and that said check was, within a few days thereafter, tendered to said Mills and to said corporation defendant, but that said tender was refused.

Plaintiff further offered to prove the main allegations of her complaint with reference to the negligence of said defendant corporation, etc.

The oral proof offered by plaintiff previous to the making of the written offer was, as above stated, excluded by the court, upon the objection of said defendant corporation. Plaintiff was not allowed to testify as to said telephonic communication, nor as to any of the statements made to her by Norwood. Nor was she allowed to give her reasons why she accompanied Norwood to the office of said claims agent, nor the reason for her acceptance of said check of two hundred dollars in full settlement of her claim.

Norwood was called as a witness by plaintiff, but the court would not allow plaintiff to examine him as to any of the

statements claimed to have been made by him to plaintiff. One of the important points relied upon by plaintiff to show fraud and conspiracy was the asserted false statements of Norwood on his first visit to plaintiff, to the effect that he had not yet settled his case with the company, but that he intended to do so, and that he did not want to give his case to the lawyers, but would go down and see the company without waiting any longer. Norwood, while a witness, admitted that he had settled his case with the company several days prior to his first visit to plaintiff, but the court refused to allow plaintiff to interrogate said Norwood with reference to said asserted false statements. In fact, all evidence offered by plaintiff tending to show the activities of Norwood and the statements made by him to plaintiff was excluded.

[1] We are of the opinion that the rulings of the court in this respect constituted error. We are of the opinion also that had plaintiff been successful in establishing the truth of the facts asserted by her in her written offer, the question of the fraudulent procurement of said release should have been submitted to the jury together with the main issues of the case. The trial court, in excluding this evidence, was evidently acting upon the theory that plaintiff was required to show a direct connection between the supposed agent, Norwood, and the recognized agent of the defendant corporation, Mills. By the adoption of such a rule, however, plaintiff was deprived of the right, accorded her by the law, of proving fraud and conspiracy by circumstantial evidence. (*Maxson* v. *Llewelyn*, 122 Cal. 195, [54 Pac. 732]; *People* v. *Donnolly*, 143 Cal. 394, [77 Pac. 177]; *People* v. *Kizer*, 22 Cal. App. 10, [133 Pac. 516, 521, 134 Pac. 346]; *Butler* v. *Collins*, 12 Cal. 457; *Levy* v. *Scott*, 115 Cal. 39, [46 Pac. 892]; *Cassel* v. *Bullard*, 64 U. S. 172, [16 L. Ed. 424, see also, Rose's U. S. Notes]; *Drake* v. *Stewart*, 76 Fed. 140, [22 C. C. A. 104].)

In brief, the substance of plaintiff's proffered proof was that she had been led to believe by trickery that her attorneys had abandoned her case; that through falsehood and deception she had been frightened into the belief that if she did not settle her case that day she could not be allowed to settle it afterward; that if she did not settle that day,

she would on the following day be subjected to the rigors of severe examination by opposing counsel and perhaps be required to submit to X-ray examination as to her physical condition; and that while she was in that condition of mind she was persuaded to go before the claims agent of the company, where, without the aid of counsel or friend, she was induced to settle for an inadequate and trifling sum.

If the release relied upon by the defendant corporation to defeat plaintiff's action was the product of such methods, plaintiff should have been allowed to prove it. Whether or not there was any existing relation between Norwood and Mills was one of the questions for the jury to decide after hearing all of the circumstances surrounding the transaction. Norwood was admittedly a total stranger to plaintiff. He had already settled his claim against the company prior to his visit to plaintiff. Plaintiff's action was not one such as would excite the public interest. The parties thereto were the only ones concerned. Norwood was obviously not acting in behalf of plaintiff. The jury, then, had a right to know what his interest was, and the extent of it, and the reason for his asserted false statements to plaintiff, if he did in fact make any. Plaintiff should have been permitted to present all of these circumstances to the jury in order to prove, if she could, that the unusual activities of Norwood could be accounted for on no other hypothesis than that he was the agent of the defendant corporation. [2] It would make little difference whether it was shown that he was an authorized or a self-constituted agent of the defendant corporation, because, in either event, if an impecunious settlement was brought about through his trickery and falsehood, the defendant corporation should not be allowed to take advantage of an unfair settlement thus made, accept the benefits thereof, and deprive plaintiff of a trial upon the real merits of the case. (*Wilder* v. *Beede,* 119 Cal. 646, [51 Pac. 1083] ; *Pope* v. *J. K. Armsby Co.,* 11 Cal. 159, [43 Pac. 589] ; *Riser* v. *Walton,* 78 Cal. 490, [21 Pac. 362] ; *Shoninger* v. *Peabody,* 57 Conn. 42, [14 Am. St. Rep. 88, 17 Atl. 278].)

[3] The courts have frequently held in no uncertain terms that where a release is tainted with fraud it should not be sustained, and that the question of whether or not such taint exists is one to be submitted to and decided by

the jury. In *Kansas City M. & B. Ry. Co.* v. *Chiles,* 86 Miss. 361, [38 South. 498], it was said: "No release of this nature should be upheld if any element of fraud, deceit, oppression, or unconscionable advantage is connected with the transaction. And in passing on the validity of such release, when assailed, all surrounding conditions should be fully developed, and the relative attitudes of the contracting parties clearly shown. So that the jury, in the clear light of the whole truth, may rightly decide which story bears the impress of verity."

In *Carr* v. *Sacramento C. P. Co.,* 35 Cal. App. 439, [170 Pac. 446], in dealing with the question of a release, the court said: "It is true that the law does not discourage settlements of controversies by agreement, and is disposed as far as possible to uphold them, but it is equally ready to relieve parties from fraud and imposition through which they have been induced to barter away their rights. In cases like this especially, where the opportunity for over-reaching is so great, the law demands good faith on the part of the releasee and a full understanding on the part of the person injured as to his legal rights."

Additional cases to the same effect are: *Atchison T. & S. F. Ry. Co.* v. *Cunningham,* 59 Kan. 722, [54 Pac. 1055]; *Smith* v. *Occidental etc. Steamship Co.,* 99 Cal. 462, [34 Pac. 84]; *Kelley* v. *Chicago etc. Ry. Co.,* 138 Iowa, 273, [128 Am. St. Rep. 195, 114 N. W. 536]; *Mattson* v. *Eureka Cedar & Lumber Co.,* 79 Wash. 266, [140 Pac. 377].

[4] Plaintiff also claims and she offered to prove that she was a profound neurasthenic at the time of the execution of said release. If that be true said release should, under the law, be scrutinized with even more care than if she were in a normal condition. (*Edmunds* v. *Southern Pacific Co.,* 18 Cal. App. 532, [123 Pac. 811]; 23 Ruling Case Law, 388 et seq.; *Carr* v. *Sacramento C. P. Co., supra.*)

It is our opinion that the evidence offered by plaintiff was improperly excluded, and that the question of the asserted fraudulent release should have been submitted to the jury. The judgment is, therefore, reversed.

Waste, P. J., and Richards, J., concurred.