[Sac. No. 96.   Department Two.—November 21, 1896.]

# E. J. LEVY, APPELLANT, v. JAY SCOTT, RESPONDENT.

FRAUDULENT TRANSFER— PRESUMPTION—EVIDENCE OF FRAUD— CIRCUM-
STANTIAL PROOFS, WHEN INSUFFICIENT.—The presumption of the law,
except when confidential relations are involved, is always in favor of
the fair dealings of the parties; and, although fraud may be proved by
circumstantial evidence, yet the circumstances must amount to proof
of fraud, and not to a mere suspicion thereof; and if the circumstances
comport with the theory of honesty and fair dealing, and there is no
direct proof of fraud, the conclusion that a debtor had transferred per-
sonal property in fraud of his creditors is not sustained by the evidence.

ID. — CONTINUED CHANGE OF POSSESSION—EMPLOYMENTS OF VENDOR.—
When there is an immediate delivery and change of possession of per-
sonal property sold, and an unequivocal change of possession so long
continued as to give notice to the world that ownership has been parted
with, it is not essential to a continuous change of possession that the
vendor shall never afterward be in charge of the property as an agent
or employee of the vendee, or of his successor in interest.

ID.—SETTLEMENT WITH CREDITORS—ASSIGNMENT TO AGENT OF BOARD OF
TRADE.—Where a debtor, upon settlement with his creditors, and in
consideration of a release of their claims, made an absolute assignment of
his property to a person representing the board of trade, the transac-
tion, as between the parties, is not an assignment for the benefit of
creditors, but an absolute sale, which passes an unimpeachable title for
a valuable consideration, which the assignee can convey to a subsequent
purchaser of the property for value.

ID.— REPLEVIN OF PROPERTY SEIZED BY SHERIFF — EVIDENCE—COST OF
REPLACING PROPERTY SOLD.— In an action to recover the possession
of property seized by the sheriff from the possession of a successor in
interest of the execution debtor, or its value, it is error to refuse to
allow the plaintiff to prove what it would cost to purchase in open mar-
ket, and replace the property levied upon by the sheriff and sold.

ID.—CUSTOM OF BOARD OF TRADE—PURCHASE AND PAYMENT FOR PROP-
ERTY.—Where the validity of a transfer to a representative of the board
of trade is involved, the court should admit evidence to explain the
custom of the board of trade in demanding indorsed notes, and all mat-
ters connected with the purchase of the property, and payment therefor.

APPEAL from a judgment of the Superior Court of
Fresno County and from an order denying a new trial.
J. R. WEBB, Judge.

The facts are stated in the opinion of the court.

*Henry Ach, Frank H. Short, Samuel Rosenheim,* and
*H. H. Hotaling,* for Appellant.

The court erred in refusing to allow plaintiff to prove

what it would cost to go into the market and purchase and replace the property levied upon by the sheriff. (*Cassin* v. *Marshall*, 18 Cal. 689; *Angell* v. *Hopkins*, 79 Cal. 181; Civ. Code, sec. 3336; note to 24 Am. Dec. 70-88.) When exclusive possession is held by a vendee for a sufficient time to advertise the *status* of the property publicly, subsequent possession of vendor, as attorney in fact or subordinate clerk, will not vitiate the transfer. (*Wolf* v. *Baldwin*, 19 Cal. 316; *Ricketson* v. *Richardson*, 19 Cal. 353; *Engles* v. *Marshall*, 19 Cal. 320-26; *Logan* v. *Driscoll*, 19 Cal. 623; 81 Am. Dec. 90; *Lestrade* v. *Barth*, 19 Cal. 666; *People* v. *Tinder*, 19 Cal. 544; 81 Am. Dec. 77; *Porter* v. *Bucher*, 98 Cal. 454; *Stevens* v. *Irwin*, 15 Cal. 503; 76 Am. Dec. 500; *Claudius* v. *Aguirre*, 89 Cal. 501; *Meads* v. *Lasar*, 92 Cal. 221; *Ford* v. *Chambers*, 28 Cal. 13; *Godchaux* v. *Mulford*, 26 Cal. 316; 85 Am. Dec. 178; *Hesthal* v. *Myles*, 53 Cal. 623; *Goldstein* v. *Nunar*, 66 Cal. 542.) If Levy bought the property without knowing Bruck, his purchase from Marvin was a *bona fide* purchase; as a *bona fide* purchase from a fraudulent purchaser is not affected by the fraud. (Benjamin on Sales, 730; 1 Am. Dec. 72; 25 Am. Dec. 105; 19 Am. Dec. 187; 19 Am. Dec. 177; 28 Am. Dec. 202; 23 Am. Dec. 607; 2 Pomeroy's Equity Jurisprudence, sec. 754; *Dorsey* v. *McFarland*, 7 Cal. 342.) Fraud will not be presumed; it must be clearly proved. (*Ledley* v. *Hays*, 1 Cal. 161; *Joyce* v. *Joyce*, 5 Cal. 161; *Bryan* v. *Ramirez*, 8 Cal. 468; 68 Am. Dec. 340; *Smith* v. *Dall*, 13 Cal. 512; *McCarthy* v. *White*, 21 Cal. 496; 82 Am. Dec. 754; *Brandow* v. *Whitney*, 54 Cal. 585; *Jarnatt* v. *Cooper*, 59 Cal. 703; *Estate of Kidder*, 66 Cal. 490.)

*E. D. Edwards*, and *J. P. Meux*, for Respondent.

The jury were fully warranted in disregarding the evidence of the witnesses for plaintiff, and in viewing the transaction as a premeditated and intentional fraud. (*Burlington Nat. Bank* v. *Beard*, 55 Kan. 773; *Mamlock* v. *White*, 20 Cal. 598.) As the acts of plaintiff were part of a plan adopted by the parties to avoid having

the stock subjected to payment of other creditors of Bruck than themselves, the transaction was fraudulent. (Civ. Code, sec. 3439; *Sabichi* v. *Chase,* 108 Cal. 81; *Mason* v. *Vestal,* 88 Cal. 396; 22 Am. St. Rep. 310; *Etchepare* v. *Aguirre,* 91 Cal. 295; 25 Am. St. Rep. 180.) Marvin had no title to convey, even had he made a sale to plaintiff. (Civ. Code, sec. 1722; *Sabichi* v. *Chase, supra.*)

HENSHAW, J.—Appeals from the judgment and from the order denying plaintiff a new trial. The action was for the recovery of certain property, or for the value thereof, levied upon and sold by the defendant, the sheriff of Fresno county, under a judgment obtained by the Sussex Shoe Company, a corporation, against Henry Bruck. The judgment in favor of defendant Scott was rendered under and in accordance with the verdict of the jury.

Plaintiff claimed as owner. Defendant's contention was that the property belonged to Henry Bruck; that plaintiff's claim of ownership was simulated and invalid, and that, in any event, his claim of title was void against the Sussex Shoe Company, an attaching creditor of Henry Bruck, for that the sale of the property by which plaintiff obtained title thereto was not followed by an immediate and continued change of possession, but that Bruck, the original owner, continued in possession and control of it.

Appellant claims that the verdict of the jury is against the law and the evidence, and that the evidence, uncontradicted, shows that he was the *bona fide* owner of the property.

After a painstaking and careful review of the evidence, we have been unable to discern anything upon which the verdict of the jury may be legally supported. It is quite true that evidences of fraud are not left lying patent in the sunlight; that fraud itself is always concealed, and that the truth is to be discovered more often from circumstances, from the interests of the parties,

from the irregularities of the transaction, coupled with injury worked to an innocent party, than from direct and primary evidence of the fraudulent contrivance itself.  Nevertheless, the evidence of these matters, facts, and circumstances, taken together, must amount to proof of fraud, and not to a mere suspicion thereof, for the presumption of the law, except where confidential relations are involved, is always in favor of the fair-dealing of the parties.  So in this case, while there are circumstances in and of themselves unusual, or perhaps in their nature suspicious—circumstances upon which respondent builds a somewhat plausible "theory" of collusion and fraud—these circumstances comport equally with the theory of honesty and fair-dealing, and there is nothing in them inconsistent with the claim that the transactions of plaintiff from beginning to end were upright and honorable.

The following are the facts: Henry Bruck was a retail boot and shoe dealer in the city of Fresno.  His business affairs becoming involved, A. L. Bryan, president of the A. L. Bryan Shoe Company, a corporation engaged in the manufacture and sale of boots and shoes at San Francisco, went to Fresno, and demanded of Bruck that he pay to said company the sum of about a thousand dollars, then owing by Bruck to that corporation.  This was in November, 1893.  Bruck was unable to satisfy the claim, and Bryan demanded and received from him a bill of sale of the shoe store.  Bruck, upon executing the bill of sale, left the store, and went to San Francisco, Bryan taking charge of it through his own agents and employees.

Here some point is made as to the character of the paper executed by Bruck to Bryan.  It is unnecessary to discuss its character, for, as will hereafter appear, whatever interest or title was by it conveyed by Bruck was thereafter by Bryan reconveyed to him.  Upon Bryan's return to San Francisco, or shortly thereafter, he learned that the board of trade of San Francisco, to protect the interests of some of its members, who were also credit-

ors of Bruck, had caused an attachment to be levied upon the store and goods. To avoid litigation, an arrangement was effected whereby Bryan reconveyed to Bruck, and Bruck, in consideration of a release and discharge by his San Francisco creditors of their claims against him, made to Mr. Marvin, representing the board of trade, a bill of sale of his property in the store. So soon as this sale was effected, Marvin and Bryan notified Seabury and Ostreicher, the two clerks who had been by Bryan put in charge of the business, that they were to continue in possession of the store as the agents and clerks of Marvin, and the attachment upon the property was released. Bryan's possession continued for about a week, being subordinate however, during a part of that time, to the possession of the sheriff under attachment. Ostreicher had been Bruck's former clerk. His employment was continued, and his services during that time were paid for by Bryan. Seabury, who was in charge, was a salesman of the Bryan Shoe Company. He was continued in charge by Marvin, with Ostreicher as clerk, and the signs in and about the store were changed to indicate that Marvin was the owner. Marvin's ownership thus continued for about a week, during which time he was endeavoring to find a purchaser for the business. This he at last succeeded in doing, in the person of Levy, the plaintiff. Levy was not a shoe merchant, nor familiar with the shoe business, but he had an intimate friend in one Frank, who was skilled in the trade, and who had been a former partner of Bruck in the business. Frank at that time was in business in Oakland. Levy's business was in San Francisco. Levy was induced to make the purchase upon the representations of Frank that the business could be made profitable, and that Levy could have the advantage of his knowledge and experience in the purchase of supplies. Levy bought, taking an assignment of the bill of sale to Marvin, and paying for his purchase the amount which the board of trade of San Francisco had agreed to accept, viz: fifty per cent of

the face value of the creditor's claims. He paid for his purchase in indorsed promissory notes, the obligations of which he afterward met.

So soon as Levy's purchase was effected, Marvin telephoned to Seabury that he had sold the store to Levy, and that Levy would come to Fresno, or send somebody there the next day, to take possession. This, in fact, Levy did. He sent one Williams, a shoe salesman, from San Francisco to Fresno the next day, and himself followed Williams to that city. Upon their arrival Seabury left. Levy then entered into the actual custody and possession of the property, and put Williams and Ostreicher to work for him. New signs were painted with his name thereon as owner. One of them was hung upon the sidewalk, the other placed within the store. The insurance policies were assigned to him. He took out a trader's license for the conduct of the business, and gave his clerks instructions for the management thereof. Levy remained in Fresno no longer than was necessary to transact this business, and effect these changes, seemingly not more than a day, when he returned to San Francisco. Williams continued working in the store for about ten days or two weeks, when he was discharged by Levy. During all of this time Bruck was not in or about the store, nor, indeed, did Levy even know him. About this time Levy and Frank, who had gone to an auction house to look over a stock of boots and shoes, there met Bruck, who was at that time living in San Francisco. Frank, knowing Bruck, having been his former partner, made him acquainted with Levy. Levy asked Bruck about the kind and character of the business done by the store when owned by him, and, upon Bruck's reply, stated that the volume and character of the business then being done were not up to his expectations, nor equal to that done by Bruck, and told Bruck, who was then out of employment, that, if he found nothing to do and was willing to go back to Fresno, he would employ him. This resulted in the employment of Bruck by Levy,

and he was sent down to take, and did take, the place of Williams. Bruck stated to Ostreicher, upon entering the store, that he had been employed by Levy in the place of Williams. Thereafter the business was conducted by Bruck and by Ostreicher, from December, 1893, until July, 1894. In July, 1894, differences arose between Bruck and Ostreicher, and upon Ostreicher's representations to Levy as to the conduct of Bruck in relation to the business, Bruck was discharged by Levy, who wrote under cover to Ostreicher directions to Bruck to turn over the business to Ostreicher, and Ostreicher, by the same communication was put in charge of it. Bruck, on being discharged, went to San Francisco for the twofold purpose of seeking another situation, and of learning from Levy the reason of his discharge. He was there about a week. His explanations seem to have satisfied Levy that Ostreicher, and not himself, was in the wrong, and the result was that Ostreicher was in turn discharged by Levy, and Bruck reinstated in the management of affairs. To assist Bruck in the management of the business, a new clerk, one Smith, was likewise employed by Levy. The business then continued under this management until the 8th of the following month, when the Sussex Shoe Company, a creditor of Bruck, made execution levy upon the store and the stock, upon a judgment against Bruck given the 16th of July, 1894, and under this execution the property was sold as the property of Bruck.

During all of these months, therefore, Levy continued in the uninterrupted possession of the property. The clerks and managers of the store at Fresno would notify Levy or his agent Frank, of the goods required in the business, and these goods would be purchased either by Frank or by Levy. It is uncontradicted that during this time Levy purchased and paid for goods to a large amount, buying of the merchants in San Francisco, and personally paying them therefor. The purchases so made and paid for by Levy amounted to between five and six thousand dollars. The property was assessed to

Levy, and the taxes paid by him out of the proceeds of the sales of the business. Statements as to the condition of the business were made sometimes to Frank and sometimes to Levy, by both Bruck and Ostreicher.

The Sussex Shoe Company's claim was for nine hundred and fourteen dollars and seventy-two cents. At the time Levy purchased the store it contained goods which had been bought from the Sussex Shoe Company to the amount of two hundred and forty-four dollars and eighty cents. At the time of the levy there were in the store, goods to the amount of eight hundred and forty-eight dollars and seventy-five cents, which had been purchased by Levy subsequent to the sale by Marvin to him, and which had never belonged to Bruck.

The first claim of respondent is that the evidence shows that the purchase by Levy was pretended; that in truth Levy merely advanced moneys to Bruck, which Bruck used in the name of Levy to repurchase his business from the board of trade; and that thus Bruck was, during all of the time, the real owner of the property. It is next claimed that the evidence shows that the sale to Levy, even if it be held to be a sale, was not followed by the immediate and continued change of possession necessary to validate the sale against an attaching creditor of Bruck.

The unusual or suspicious circumstances to which we have adverted, and upon which alone the first contention can be based, are found in the following facts: Levy did not go to Fresno after his first visit, but allowed the business to be conducted by his clerks and by Bruck without giving it immediate personal supervision. But that he did this is not proof of fraud, and is not even surprising, in view of the further fact that his business was not that of a shoe dealer; that he had no personal knowledge of such business; that he bought, as it were, upon speculation, and upon the recommendation of his friend Frank; that Frank was familiar with the shoe business, and was his trusted agent in the conduct of the business affairs. Moreover, it appears that Levy

was engaged in another and entirely different business in San Francisco. It is not easy, under the circumstances, to see what good his presence could have worked if he had repeatedly gone to Fresno, and it is not surprising, therefore, that he did not go. There is also found in the evidence a statement by Ostreicher, when asked who was in charge of the store, to the following effect: " Then I guess Bruck was in charge of the store, the way it seems to me." But, whatever effect is to be given to the guess of the witness, it is entirely overcome by his further statements and explanations. He says that when Bruck came he stated that he had made arrangements with Mr. Levy to go to work for him in that store, to manage it for him; that he himself, as well as Bruck, were both employed and discharged by Levy; that Levy's signs were put up, and the insurance changed; that the bills that came to the store were made out for the most part against Levy; that those not made out against Levy were made out against the name of Frank, the purchasing agent of Levy; that it was recognized in the wholesale shoe trade that Frank was conducting the business for Levy as his personal agent.

The friendship between Frank and Bruck is urged as a suspicious circumstance to support the theory that the sale to Levy was but colorable, and in the interest of Bruck and Frank. But to this it need only be said that there is not the slightest evidence in support of it, while there is overwhelming evidence that Levy put into the business, besides the purchase price, large sums of money of his own, and no money belonging to any-one else.

From what has been said, it results that there is no evidence in the case impeaching the purchase by Levy as colorable merely, or showing that by collusion and secret contrivance Bruck was the real owner. Nor does the further claim that the purchase by Levy is void because not followed by an immediate and continuous change of possession find any better support. That the

change of possession in this case was immediate is incontestibly and indisputably shown. The continuous change which the statute contemplates does not demand, at the peril of avoiding the sale, that the vendor shall never again at any time or under any circumstances be found in the possession of the property sold. It does, however, require an unequivocal and substantial change of possession, so long continued as to give notice to the world that ownership has been parted with. As is said in *Stevens* v. *Irwin,* 15 Cal. 503, 76 Am. Dec. 500: "The possession must be continuous, not taken to be surrendered back again, not formal, but substantial; but it need not necessarily continue indefinitely when it is *bona fide* and openly done, and is kept for such a length of time as to give general advertisement to the *status* of the property, and the claim to it by the vendee." The cases of *Godchaux* v. *Mulford,* 26 Cal. 316, 85 Am. Dec. 178, *Ford* v. *Chambers,* 28 Cal. 13, and *Porter* v. *Bucher,* 98 Cal. 454, are to the same effect. In the present case we think that the change was fully sufficient to satisfy the requirements of the statute. Neither Bruck nor Levy had dealt with the Sussex Shoe Company from the time when Levy purchased the business, and no part of the claim of the Sussex Shoe Company against Levy for which it procured judgment was for purchases made after Levy acquired ownership of the business. It cannot be claimed, therefore, that the corporation was deceived into giving credit by the fact that, during part of the time, Bruck managed the business for Levy.

Some attempt is made to attack the sale by Bruck to Marvin, and the claim is asserted that the sale was not a sale, but was a mere assignment to Marvin for the benefit of creditors. The transaction, however, was not an assignment. It was an absolute sale. It is true that as between Marvin and the creditors whom he represented, and who had to him assigned their claims, Marvin was a trustee, and accountable for the disposition of the money which he might receive by a subsequent sale of the business; but, as between Marvin and Bruck,

the transaction was a simple sale, Bruck selling out all his property and interest in the business, and receiving therefor a release of the claims of all of the creditors whom Marvin represented.   If Marvin, then, representing the San Francisco creditors of Bruck, obtained from Bruck an unimpeachable title, as under the evidence he clearly did, Levy in turn succeeded to that title.   The transfers from Bruck to Marvin, and from Marvin to Levy, are both supported by full and valuable consideration paid.

In contemplation of a new trial, it should be added that the court erred in refusing to allow plaintiff to prove what it would cost to purchase in open market and replace the property levied upon by the sheriff and sold.   (Civ. Code, sec. 3336; *Cassin* v. *Marshall*, 18 Cal. 689; *Angell* v. *Hopkins*, 79 Cal. 181.)

The court should also have permitted the plaintiff to explain the custom of the board of trade in demanding indorsed notes, and all matters connected with the purchase and payment of the property.   The exclusion of this evidence under the circumstances tended unjustly to place the defendant in a false position before the jury.

We think the foregoing will remove any difficulties which may be experienced upon a new trial of the cause.   Other alleged errors presented for consideration by plaintiff have not, therefore, been considered, but for the foregoing reasons the judgment and order are reversed and the cause remanded for a new trial.

McFARLAND, J., and TEMPLE, J., concurred.