[Civ. No. 2273.   Third Appellate District.—July 25, 1921.]

HARRY ARAKELIAN et al., Appellants, v. MARTHA A. SEARS, as Executrix, etc., et al., Defendants; WILLIAM M. CURTNER, Respondent.

[1] VENDOR AND VENDEE—PURCHASE OF REAL PROPERTY—INNOCENT PURCHASER FOR VALUE—SUFFICIENCY OF EVIDENCE.—In this action brought by the purchaser of real property from a bank, which had acquired it under foreclosure proceedings, to quiet title thereto against an attaching creditor of the former owner, the evidence is insufficient to show that plaintiff purchased the property with knowledge that the bank had participated with the former owner in an alleged fraudulent arrangement to defraud such creditor.

APPEAL from a judgment of the Superior Court of Merced County.  E. N. Rector, Judge.  Reversed.

The facts are stated in the opinion of the court.

Andrew Johnston and R. R. Fowler for Appellants.

Francis O. Hoover and Joseph M. Cross for Respondent.

BURNETT, J.—On April 6, 1915, Charles Murray and W. A. Jones and their wives were the owners of the lands in controversy situated in the county of Merced.  On said date they executed and delivered to the Commercial and Savings Bank of Stockton a deed of trust covering said lands together with another small tract to secure a loan of ten thousand dollars.  This deed of trust was recorded in said county on April 14, 1915.  On February 17, 1916, this deed of trust was assigned by said bank to the First National Bank of Modesto.  On May 12, 1916, the indebtedness secured by this deed of trust being due and unpaid, the lands which are the subject of this action were sold to W. N. Steele, then president of the last-named bank, for the sum of ten thousand six hundred dollars, the amount of the indebtedness.  The proceedings under which this sale took place were found by the trial court to be entirely regular, and there is no dispute that they complied strictly with the requirements of the law.  A trustees' deed was duly made to said Steele on said May 12th.  One week later, on

May 19th, Steele and wife conveyed said lands to plaintiff Harry Arakelian. The consideration paid therefor by said Arakelian was the sum of twenty-one thousand dollars. On January 3, 1916, respondent, William M. Curtner, began an action in the superior court of Stanislaus County against Murray and Jones and their wives to recover the sum of fifteen thousand dollars and interest. On said date a writ of attachment was issued by said court and thereupon levied upon said lands by the sheriff of said county. This attachment was recorded in the county recorder's office on the following day. In that action Curtner recovered judgment against the defendants therein for five thousand eight hundred dollars, and a copy of this judgment was duly recorded on June 19, 1917. The present action to quiet title was brought July 10, 1916, against Curtner and others, and its specific purpose was to secure an elimination of a reservation of five acres of land for road purposes, being a part of said land purchased as aforesaid by said Harry Arakelian. The rights of the other defendants have been foreclosed, and they are not parties to this appeal, and we may add that Harry Arakelian seems to be the only one of the plaintiffs that has any interest in the controversy, and we shall hereafter refer to him as plaintiff and appellant. Defendant Curtner appeared in the action, and on November 22, 1916, filed an answer, in which he set up his writ of attachment and prayed that it be adjudged superior to the title of plaintiff. The trial of the case was begun on April 5, 1917, and at the close of the taking of the testimony respondent Curtner asked leave of court to file an amended and supplemental answer and cross-complaint. Such leave was granted and said pleading was filed on the ninth day of October, 1917. An answer to said cross-complaint was filed on November 12th following, and further evidence was taken on January 21, 1918. Thereafter findings were filed and the judgment entered in favor of cross-complainant Curtner, from which plaintiff has brought the appeal. In respect to the sale under the deed of trust and the transfer to plaintiff, the amended answer and cross-complaint charged that: "Said W. N. Steele, said Charles Murray and W. A. Jones, and the said Harry Arakelian conspired and contrived together by means of the transaction hereinabove set forth . . . to defeat the lien of the said attachment of de-

fendant, William M. Curtner, upon the said land, and to defraud and cheat the said defendant thereby, and that they did, with the fraudulent intention of cheating and defrauding the said defendant, by means of the purchase of said indebtedness and deed of trust by the First National Bank of Modesto, and the sale of the said land thereunder to W. N. Steele, attempt to effectuate and accomplish a transfer of the title in and to the said land to the plaintiff, Harry Arakelian, freed from the said lien of plaintiff's attachment, and did thereby effect a fraudulent conveyance of the said land from the said Charles Murray and W. A. Jones to the said Harry Arakelian for the purpose of attempting to deprive defendant, William M. Curtner, of his lien upon and interest in said land.'' The court found that Curtner had not been informed that the land was about to be sold under the trust deed; that the price for which the said land was sold to said W. N. Steele under said deed of trust was not a fair and reasonable price for the land, but was an inadequate price therefor; that the said land was within one week thereafter sold to plaintiff, Harry Arakelian, for more than ten thousand dollars in excess of the amount paid by Steele; that the said excess was not kept by Steele as his private property, but a portion thereof was used by him in the payment of notes of the said W. A. Jones and Charles Murray, held by the First National Bank of Modesto, and that the benefit thereof was thereby given to the said Jones and Murray, and that a portion thereof was paid in cash by said Steele to said Murray and Jones, and that said deed of trust and the indebtedness secured thereby was not purchased by said bank as an investment, but for the purpose of foreclosing the same and of selling the land as aforesaid and for the purpose of defrauding Curtner; that the transfer to plaintiff was fraudulent, and that he had knowledge of and was a party to the fraud, and therefore took the land subject to the lien of Curtner's judgment.

The case naturally divides itself into two parts: the first relating to the question whether the sale to·Steele under the trust deed was fraudulent, and the second, whether plaintiff, if fraud existed, participated in it, or as a purchaser, was charged with such knowledge as to make the property in his hands burdened with the lien of Curtner's judgment.

As to the general principle that such conveyance may be avoided or subjected to the lien of a creditor's claim, where the purpose ·exists to defraud a creditor, there is no controversy, and hence that feature of the case may be dismissed without comment.

Respondent claims that certain "badges of fraud" characterized the transaction resulting in the sale to Steele sufficient to warrant the finding of the court as to the invalidity of said purchase.

The various circumstances, which, in their aggregate probative effect, are deemed by respondent sufficient for this purpose, are argued with great force and learning by counsel on both sides, but as we have reached the conclusion that there is insufficient support for the finding that appellant participated in or was charged with notice of any fraud, we may omit consideration of the finding that Steele's purchase for the said bank was fraudulent. We may say, however, that if such fraud was perpetrated there can be no doubt that an action would lie against Steele and the said bank to establish a trust in said surplus fund and make it subject to respondent's claim. This would follow from the established principles of equity practice and is directly within the contemplation of section 2224 of the Civil Code.

There is no evidence in the record that plaintiff actually committed fraud or that he had actual knowledge that any fraud had been committed in reference to the conveyance of this property. Indeed, respondent concedes: "Unless Arakelian had sufficient notice of the fraud to bind him we have no standing in this court at any rate." It is further admitted that he had "no notice of the fraud until after the trustees' sale was complete." Thus is the inquiry limited to what occurred subsequently. The record shows that a few days prior to May 19, 1916, when he purchased the property, plaintiff brought to the office of his attorney, Mr. Johnston, the abstract of title for examination; Mr. Johnston examined it and gave his opinion to the effect that said trust deed took precedence over the attachment, and that the title was in said Steele. There is no doubt that the abstract justified said opinion. Nothing appeared upon the face of it to indicate any irregularity in the sale to Steele or to excite suspicion that the transaction was tainted in

any degree with fraud. That plaintiff was justified in relying upon the advice of his attorney goes without question. There is only one possible circumstance that might militate against this view and that relates to the consideration for the sale to Steele. It is claimed that said price was inadequate. It was not the full value of the property, but there is no evidence that Mr. Johnston, upon whose advice plaintiff relied, was familiar with the market value of the land or knew the price that was to be paid by plaintiff. Therefore, his client could not be charged with constructive notice that the price paid by Steele was inadequate. Moreover, such inadequacy of price would not be sufficient to justfy a conclusion that said sale was fraudulent, nor would it impose upon an intending purchaser the duty of making inquiry concerning it. (*Morrow* v. *Graves,* 77 Cal. 218, [19 Pac. 489].) It may be added that said bank had the unquestioned right to direct the trustees to sell the property, and it was the duty of the latter to sell to the highest bidder, (*Stockwell* v. *Barnum,* 7 Cal. App. 419, [94 Pac. 400]), and it may be stated as a matter of common knowledge that under such sales the property is rarely sold for more than sufficient to satisfy the indebtedness. Thus far nothing in plaintiff's conduct is open to suspicion or to just criticism. If an attorney may not safely rely upon such record it is obvious how difficult, if not impossible, it would be for him to advise a client as to the integrity of a title to land. Nor do we think there was any reason for suspicion because of the presence of Murray and Jones in the office of Hawkins & Hawkins at the time of the execution of the deed from Steele. There is nothing to show that they were there for any improper purpose or that their business had anything to do with this transaction. There is no evidence that plaintiff had ever met them before or had any reason to believe that they were concerned in any manner with the sale to him. Indeed, he had the right to assume that they were moved by an honest purpose, and that an inquiry upon his part suggesting anything to the contrary would be justly and emphatically resented.

We may go further and say that if he had made such inquiries as respondent suggests, he would probably have received such answers as to indicate the absence of fraud. We have in the record evidence of what Steele would have

stated, namely, that the motive of the bank in buying the trust deed was to protect their unsecured notes, and said creditor deemed it entirely ·proper to do so.  Neither Jones nor Murray was called as a witness, but we cannot assume that either would have testified to anything derogatory to his own integrity or good faith in the transaction or would have made such admission if interrogated by Arakelian.

Moreover, since fraud cannot be presumed, in the absence of evidence to the contrary, it may ·be taken for granted, if necessary to acquit him of culpability, that appellant *did* question these parties and ascertained nothing inconsistent with upright conduct.

Nor can we discover in what occurred thereafter any circumstance that would reflect in the slightest degree upon the good faith of appellant.  He withheld for about six months the payment of ten thousand dollars of the consideration for the deed, and if in the meantime he had acquired knowledge of any fraud or been put upon inquiry, he might be charged with responsibility for making such payment.  A diligent search through the record, however, has failed to disclose any such condition.  Manifestly the incidents of this suit do not furnish any evidence that appellant's property should be subject to the claim of respondent.  The action was brought before appellant had made said final payment, but the purpose was, as before indicated, to settle the question of a right of way.  In the answer to this complaint filed November 22, 1916, there was no suggestion whatever of any fraud in said sale under the trust deed or in the conveyance to plaintiff. Therein Curtner relied upon the lien of his attachment in conjunction with the allegation, ''that any right, title, estate, claim or interest which the plaintiffs herein or either of them may have in or to the said real property or any part thereof is subsequent and subservient to the said interest and lien of the said William M. Curtner under and by virtue of the said attachment.''  Whatever may have been the reason for the omission of respondent to set up fraud in this pleading, it is quite plain that nothing contained therein could justly weaken plaintiff's faith in the integrity of his own title to this land.  The supplemental answer and cross-complaint in which fraud and conspiracy were alleged were filed on the ninth day of October, 1917, and until a copy thereof was served on appellant's attorney, it is fair to say

that neither he nor Arakelian had any knowledge whatever of respondent's theory of fraud or was apprised of any fact which could legally require hesitation or forbearance in the purchase of said property. The full consideration for the sale of the land had been paid long before the claim of respondent was thus exhibited and, of course, the validity of appellant's title could not be impeached in this manner. It is true that plaintiff knew that Curtner was a creditor of Murray and Jones, but he had the knowledge also that the First National Bank of Modesto was a creditor, holding a prior lien, and that the usual course was pursued to secure the payment of its claim.

While respondent has thus limited the inquiry to what occurred after the said trustees' sale, we have searched the record to determine whether anything was brought to the knowledge of appellant prior to that time that would legitimately point to fraud, and the investigation has disclosed nothing of the kind. We may add that it is quite apparent, indeed, that he knew nothing whatever of said sale until after it took place. If he had been informed of it he certainly would have been a bidder with a fair prospect of obtaining the property for much less than he afterward paid for it.

In confirmation of the views herein expressed we may set forth the material portion of the testimony of plaintiff and his attorney. The former said: "I submitted the abstract to Mr. Johnston for examination and he rendered an opinion and then I went and got my deed. . . . I bought the land at seventy dollars an acre, the market value of the land, and I did not know that Mr. Curtner claimed any interest in the land when I bought it. In the beginning I did not know anything about it. I found out after we had paid him. . . . Mr. Johnston told me, he said, it is foreclosed the trust deed, Mr. Curtner hasn't got a chance to collect that money any more . . . he told me that 'when the deed of trust is foreclosed, it knocked everything, his claim against the property.' " In reply to the question, "Well, you did not, before the bank foreclosed the deed of trust, or before the bank bought that deed of trust from the Stockton Bank, you did not have an understanding did you, with Murray and Jones, or Mr. Steele, that you were going to afterward buy the land?" he said: "No, sir, I knew nothing of those

things. I did not know I was going to buy the land or anything about it until Mr. Phelps took me out there. Then I came back from Fresno and Mr. Phelps told me I had to see the bank. Then I went to see Mr. Steele. Mr. Phelps never mentioned who owned the land. Murray and Jones were not present when the deal was made, but at the time we closed the deal we met them over at Mr. Hawkins' office. . . . When I paid this ten thousand dollar note I did not know that Mr. Curtner was contesting my title. . . . I did not ask Mr. Johnson to explain what kind of claim this was of Curtner's. I did not ask him nothing, because I did not know anything about the law.''

Mr. A. Johnston testified: ''I examined the abstract for Mr. Arakelian. The abstract showed a record of the proceedings and I gave it as my opinion that the trust would take precedence over the attachment. . . . I knew as early as September, 1916, when the demurrer was filed and when it was served on the 15th, that Cross and Hoover were appearing in the action and contesting Mr. Arakelian's suit, but I did not know for what purpose or under what theory they were going to proceed. The trustees' deed had been made in conformity to the deed of trust and was the deed of trust in which Mr. Steele and subsequently Mr. Arakelian acquired title, and that is the opinion I held at that time.''

There is no dispute as to the fundamental principles of law and of equity that should be invoked in a case like this. They are stated in the code and decisions as follows: The law presumes that a person is innocent of crime or wrong; that private transactions have been fair and regular; that the ordinary course of business has been followed (sec. 1963, Code Civ. Proc.); an inference of good faith rather than fraud should be indulged and the presumptions against fraud must be overcome by him who alleges improper conduct (*Levy* v. *Scott,* 115 Cal. 39, [46 Pac. 892]), or, as stated in *Roberts* v. *Burr,* 135 Cal. 156, [67 Pac. 46], ''the evidence of the facts and circumstances, taken together, must amount to proof of fraud, and not to a mere suspicion thereof.''

Even if the facts present a double aspect, one consistent with fair dealing and the other involving dishonesty of purpose, the court, unless the scale decidedly predominates for the latter, will strike the balance in favor of honesty

and innocence.  (*Hatch* v. *Bayley,* 12 Cush. (Mass.) 27;
*Price* v. *Gover,* 40 Md. 102.)

We are aware that this latter apothegm is particularly
for the guidance of the trial court, and we are not forgetful
of the rule that leaves to that tribunal the determination of
questions of evidence, but we are persuaded that herein is to
be found no substantial support for the position that appel-
lant is chargeable with fraud or indirection.

When fairly considered the evidence reveals only one cir-
cumstance that excites the least suspicion as to the purchase
by Arakelian and that is, his knowledge of the attachment,
but we think it has never been supposed by the profession
or held by the courts that ''knowledge by a grantee in a
deed of real estate that at the time of the conveyance there
existed a claim which might at some time be reduced to
judgment, and if so reduced enforced against the real estate
of the grantor'' would justify setting aside the deed as
fraudulent at the suit of the creditor.

It is worthy of note that, if anyone is to blame for the
defeat of respondent's lien, the censure must be laid at his
door.  He should have notified Arakelian of the claim of
fraud before the latter made his final payment.  It was
eighteen months after the purchase, and nearly a year
after the entire consideration was paid, before the defense
of fraud was even set up in court.  And there is no evi-
dence that at any time he gave personal notice to Arakelian
that there was any infirmity in the trustees' deed.  His
silence under such circumstances would naturally incline a
court of equity to regard his claim with suspicion and
distrust.  Of course, neither plaintiff nor Johnston could
know simply from the attachment that his suit was meri-
torious or that he would recover judgment in the action upon
the ground of fraud affecting the sale to Steele or upon
any other ground.  Assuredly they were not chargeable with
knowledge that respondent was being defrauded because
they knew he had a claim against a former owner of the
premises and sought to enforce it against the property.  If
respondent's theory be correct, then it would follow, as
suggested by appellant, that the rule of *caveat emptor* would
apply whenever an abstract of title shows that an at-
tachment has ever been filed against the land it covers.

" We deem it unnecessary to notice specifically the various other decisions cited by the parties herein. It can hardly be doubted that they declare the law as applicable to the particular facts involved. Indeed, there is scarcely room for dispute as to the principles germane to the present controversy, but, as we view it, the trial court has made an erroneous deduction from the facts. [1] As we read the record, Arakelian was an innocent purchaser, having paid the full value for the land, with an honest purpose, and with no knowledge of any fraud in the transaction, and it would be unjust to burden his property with the claim of respondent.

We may say in conclusion that the comments of the supreme court of Kansas in *Burke* v. *Johnson*, 37 Kan. 337, [1 Am. St. Rep. 252, 15 Pac. 204], may be read with profit in this connection. Therein it was claimed that the fact of the hurried manner of the purchase and the consideration paid by Armstrong were sufficient to put Johnson upon notice of the former's fraudulent intent, but the court said: "If these things are badges of fraud, and of such character as to set aside this transaction, we think it would unsettle the real estate transactions or many of them, in Kansas." The court refers to the fact that Johnson's attention was called to the land by a neighbor, that he went and found the agent and owner, visited the land, examined the records to see that the title was good, made an offer for the property, which was accepted, paid part of the consideration down on the same day and completed the transaction the following day. The court concluded that there was no evidence of fraud on his part. No doubt other similar decisions could be found.

We think the judgment should be reversed, and it is so ordered.

Hart, J., and Finch, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 22, 1921.

All the Justices concurred, except Shaw, J., who was absent.